Putnam v. Juvenile Shoe Corporation.

---

ANNA A. PUTNAM, Appellant, v. JUVENILE SHOE CORPORATION et al.

In Banc, February 17, 1925.

1. **CORPORATION: Bonus to Officers and Employees: Fraud.** The payment of a bonus to officers and employees of a corporation, when appropriately authorized, is not in itself a fraud upon dissenting stockholders. It has become a common practice among large employers, as a method of stimulating loyalty, faithfulness, increased activity and continuous diligence among employees, giving them a

Putnam v. Juvenile Shoe Corporation.

real and extra interest in the success of the company's business above that induced by a definite and unfluctuating compensation, and adding to the profits of the company and dividends payable to stockholders. The payment of a bonus is legal or illegal according to the purpose for which, and the circumstances under which, it is authorized.

2. ———: ———: **Evidence of Fraud: Beneficial to Company.** If the payment of a bonus or deferred salary to officers and employees is beneficial to the corporation it is not in itself a fraud upon dissenting stockholders; and courts will not substitute their judgment for that of the stockholders as to what is good business policy or as to what is beneficial to the corporation, absent evidence of fraud upon minor stockholders. And when only one out of a large number of stockholders is objecting to the payment of the bonus, and that one owns only a small number of shares compared to the very large number owned by the others, there is convincing proof, not only of the absence of fraud, but also of the benefits honestly and reasonably to be expected to flow from the practice.

3. ———: ———: **Ratification After Suit Brought.** The ratification at a stockholders' meeting of the illegal and fraudulent acts of the board of directors of a corporation, whether done before or after suit is brought by the dissenting stockholders to compel a restoration of the money fraudulently misappropriated, will not cure the fraud; but where the act of the board of directors in authorizing the payment to officers and employees of reasonable bonuses or deferred-salaries in excess of their stated compensation was at worst only voidable and was not in itself a fraud upon dissenting stockholders, but was a prudent act, honestly made and beneficial to the company, ratification at a properly held stockholders' meeting after ample notice that it was being called for the purpose of ratifying such payments, held after suit is brought by such dissenting stockholders against the corporation and the directors participating in said voidable act, is binding upon consenting and dissenting stockholders alike, and the suit cannot be maintained.

4. ———: ———: ———: **Participation by Interested Directors in Stockholders' Meeting.** Directors who participated in the act by which officers and employees, including themselves, were paid reasonable bonuses or deferred salaries, are entitled to vote at a stockholders' meeting called to ratify such act, and such ratification is not illegal because they voted for it. Stockholders have power to bind minority stockholders, and they have full power to dispose of a suit brought against the corporation, after such suit is brought by a minority stockholder, by ratifying the act of the board of

directors, unless such act was fraudulent or illegal. If the act was not fraudulent, but only voidable, ratification, even after suit brought, makes the act binding upon the corporation, and is effective to dispose of the suit.

Citations to Headnotes: Corporations: 1, 14a C. J. par. 1907; 2, 14a pars. 1907, 1943; 3, 14a C. J. pars. 2232, 2246; 4, 14a C. J. pars. 2237, 2245, 2246.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*McReynolds & McReynolds* and *John H. Flanigan* for appellant.

(1) The directors had no authority to give a bonus. 4 Fletcher on Corp. p. 4012, note 76. Directors are trustees, answerable as such. 14a C. J. 97-99. (2) Plaintiff, as a non-consenting minority stockholder, was entitled to sue in equity for the benefit of the corporation, making the corporation a defendant, where, as here, the corporation was dominated by the individual defendants. R. S. 1919, secs. 10169-10171; Ward v. Davidson, 89 Mo. 445; Proctor v. Farrar, 213 S. W. 469; Von Ardin v. American Tube Works, 74 N. E. 680; Kleinschmidt v. American Mining Co., 139 Pac. 785; Eaton v. Robinson, 29 L. R. A. 100; Smith v. Rader, 173 Pac. 970; Albers v. Merchants Ex., 45 Mo. App. 206; Hingston v. Montgomery, 121 Mo. App. 451; Bulkley v. Iron Co., 77 Mo. 105. (3) The pretended oral agreement was, in substance, that "if the corporation makes money some additional compensation will be paid you. It is optional with the corporation to pay it or not to pay it, and the amount is wholly indefinite and uncertain and may be determined in the future by discretionary and optional action of the board." Such agreement is unenforceable, it being void for uncertainty and lack of mutuality. Burks v. Stam, 65 Mo. App. 455; Mackintosh v. Thompson, 58

App. Div. 25, 68 N. Y. Supp. 492; Fairplay School Twp. v. O'Neill, 27 Ind. 95, 26 N. E. 686; Butler v. Kammerer, 218 Pa. 242, 67 Atl. 332. Since it was void the directors had no right to recognize it by giving away the corporate funds. Directors, as a matter of law, may be compelled to restore to the corporation moneys they have expended on invalid claims. 14a C. J. 108, note 35; Sleet v. Farmers Mut. F. Ins. Co., 19 L. R. A. (N. S.) 421; Butts v. Wood, 38 Barb. 181, 37 N. Y. 317; Adcock v. New Crystal Ice Co., 234 S. W. 336. (4) The bonus of $18,800 allotted by President Reith to himself should be restored to the corporate treasury for several reasons: (a) The corporate board of directors consisted of nine shareholders; a majority were necessary to constitute a quorum for transaction of corporate business. Reith was present as the fifth director at the board meetings of January 18, 1919 (when he claims the other board members orally promised to pay him a bonus later in the year if the corporation made money), and of November 29, 1919 (when the "melon was cut" and $50,000 of the stockholders' money was given away). If he had been absent there would have been no quorum, and the meetings, for lack of a quorum, would have been futile and not binding on the corporation. He had to be counted to constitute a quorum. He could not lawfully or morally represent both the corporation and himself. A director can claim no compensation under board action where he had to be counted to make up a quorum. In re McCarthy Port. El. Co., 120 C. C. A. 261, 201 Fed. 923; Steele v. Gold Mng. Co., 42 Col. 529, 95 Pac. 349; Camden Land Co. v. Lewis, 101 Me. 78; McConnell v. Combination Mng. Co., 30 Mont. 239, 31 Mont. 563; Butts v. Wood, 37 N. Y. 317, 38 Barb. 181; Fields v. Victor Co., 175 Pac. 529; Burton v. Lithic Mfg. Co., 73 Ore. 605, 144 Pac. 1149. While the courts of this State have not discussed the question from just the above angle, they have held that if a director's own vote was essential to passage of a resolution fixing his salary, such resolution is void and not binding on the corporation.

Ward v. Davidson, 89 Mo. 445; Davis Mill Co. v. Bennett, 39 Mo. App. 460; Bennett v. St. Louis Roofing Co., 19 Mo. App. 349; Remmers v. Seky, 70 Mo. App. 364; Hill v. Rich Hill Coal M. Co., 119 Mo. 9. (b) That Reith performed any services outside the scope of his duties as president is a mere fiction and sham. The by-laws provide that the president "shall have general and active management of the business of the corporation." Under these circumstances it cannot be said that he performed any service which, as president, he was not bound to perform. Note, L. R. A. 1917 F, pp. 326-330. (c) His compensation was fixed at $6,000 for the year 1919 as shown by the minutes of the meeting of January 18, 1919. This solemn record cannot be impeached by parol. Davis Mill Co. v. Bennett, 39 Mo. App. 461. (d) The only definite contract which Reith had in advance of the rendition of his services was for a salary of $6,000 for 1919. Under the law, a director may only recover for services when the compensation is definitely fixed in advance by board action. Rose v. Carbonating Co., 60 Mo. App. 28; Bennett v. Car Roofing Co., 19 Mo. App. 349; Besch v. Western Carriage Co., 36 Mo. App. 336; Ward v. Davidson, 89 Mo. 454; Remmers v. Seky, 70 Mo. App. 364; Pfeiffer v. Brake Co., 44 Mo. App. 59; Beach v. Stouffer, 84 Mo. App. 395; Taussig v. Ry. Co., 166 Mo. 33; Welden v. Farm Loan Co., 213 S. W. 54. (e) The board permitted Reith to be the sole judge of his own worth to the corporation. Irrespective of written authorities, this immoral arrangement should not be permitted to stand. Reith gave himself two-fifths of the bonus and another two-fifths to four of his intimates. The five of them pocketed $41,000. Less than one-fifth he apportioned among thirty-one of the smaller employees. His conduct would have been only a little less defensible and a little more reprehensible if he had taken it all. (f) The resolution of January 18, 1919, fixing Reith's salary at $6,000 was binding on him by way of estoppel and he is estopped to claim compensation in excess of that amount. Voorhees v. Mason, 245 Ill. 256.

(5.)   The ratification was not binding on plaintiff.   Not all the other stockholders can deprive her of her rights— they ratified for themselves alone.   Brick Co. v. Schoeneick, 65 Mo. App. 283; Von Arnim v. American Tubeworks, 74 N. E. (Mass.) 680; Godley v. Crandall, L. R. A. 1915D, 632; Flinn v. Brooklyn St. Ry. Co., 53 N. E. 520; Klein v. Brewing Assn., 83 N. E. 441; Continental Security Co. v. Belmont, 51 L. R. A. (N. S.) 112; Bagshaw v. Eastern Union Ry. Co., 7 Harê, 114; 4 Fletcher on Corps. sec. 2755, p. 4010; 4 Fletcher on Corps. sec. 2507, note 29; Theobald v. U. S. Rubber Co., 146 N. Y. Supp. 597; Endicott v. Marvel, 81 N. J. Eq. 378; Brown v. DeYoung, 47 N. E. 863; Matthews v. Headley, 100 Atl. 645; McConnell v. Com. M. & M. Co., 76 Pac. 194.   (6) If plaintiff, in view of the ratification by other stockholders, is not entitled to a decree requiring defendants to restore the misappropriated $50,000 to the corporate treasury, at least she is entitled to a judgment in her own favor for her proportionate part, as stockholder, of the misapplied fund.   Matthews v. Headley, 100 Atl. (Md.) 645; Brown v. DeYoung, 47 N. E. 863; Emerson v. Gaither, 64 Atl. 26; Eaton v. Robinson, 29 L. R. A. 100; Proctor v. Farrar, 213 S. W. (Mo.) 469.

*Lewis & Rice* and *Howard Gray* for respondents.

(1)   The appellant's first point is that the directors had no authority to give a bonus.   It will be noticed that only one case is cited in support of the proposition.   This case, when examined, does not support the proposition. The general rule is to the contrary.   2 Fletcher's Encyclopedia on Corporations, p. 2151; Roberts v. Mays Mills, 114 S. E. 530; Payne v. United States, 269 Fed. 871; Kenicott v. Wayne County, 16 Wall. 471, 21 L. Ed. 322; Zwolanek v. Manufacturing Company, 137 N. W. 769.   (2)   The facts disclosed by the testimony do not bring the plaintiff's case within the decisions cited under appellant's second point; furthermore, the evidence shows that both a majority of the directors (in fact, all, as shown by their action at the stockholders' meeting)

and a majority of the stockholders (all but appellant) approved the payment. Vogeler v. Punch, 205 Mo. 558. (3) Answering appellant's point that the oral agreement to pay the bonuses was so indefinite and uncertain that it was void for uncertainty and lack of mutuality, it is sufficient to say that this is not a suit on the contract, but the contract has been fully executed by both parties. The only thing left uncertain was the amount to be paid as a bonus, and this was made definite by the corporation paying a sum for that purpose, which was accepted by the employees. In other words, after a contract has been performed it is too late to raise the question of uncertainty or lack of mutuality. Reynolds v. Wash-Griffith Tie and Lumber Co., 227 S. W. 438; Eaton v. Coal Co., 125 Mo. App. 194; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 151; Eldorado Ice & Planing Co. v. Kinard, 131 S. W. 460; Stanley v. Summrell, 163 S. W. 697; Boyd v. Brown, 34 S. E. 907; Willets v. Insurance Company, 45 N. Y. 45. (a) It was urged all through the trial by the appellant that the contract with these employees had to be evidenced by records of the board of directors. This is not the law. Taussig v. St. Louis & Kirkwood Railroad Co., 166 Mo. 28; O'Brien v. O'Brien Boiler Works Co., 154 Mo. App. 183; 4 Fletcher's Cyclopedia Corporations, secs. 2739, 2760, 2754; Brown v. Creston Ice Co., 85 N. W. 750; Politz v. Wabash Railroad Co., 100 N. E. 721; Altavista Cotton Mills v. Lane, 112 S. E. 637. (b) Instead of the officers being guilty of a fraud in carrying out these agreements with these employees, they would have been conniving at a fraud if they had refused to carry out the agreement. Zwolanek v. Baker Mfg. Co., 137 N. W. 769; 4 Fletcher's Encyclopedia on Corporations, sec. 2394; Cummings v. Parker, 250 Mo. 427. (4) Appellant says that the $18,800 allotted to Mr. Reith should be returned to the corporation. (a) As to her first proposition, the contention is settled adversely to appellant by the following authorities: Taussig v. Railway Company, 166 Mo. 68; 4 Fletcher, Cyclopedia of Corporations, p. 4009.

(b)   In answering the second proposition that the meetings at which the bonus was voted by the directors and ratified by them did not have a majority of the disinterested directors present, we say this contention is in conflict with the allegation of her petition and the theory on which she tried her case, and, further, that the meeting of the stockholders, subsequently called and held for the purpose of taking the vote of the stockholders on the said act of the directors ratified said action and made it legal. Booth v. Beattie, 118 Atl, 257; Russell v. Henry Patterson Co., 232 Pa. 113; Soter v. Coatesville Boiler Works, 101 Atl. 744; 4 Fletcher on Corporations, secs. 2394 and 2761; Pollitz v. Railway Co., 100 N. E. 721; Harris v. Moreland Motor Co., 279 Fed. 543; Steeple v. Max-Kuner Co., 208 Pac. 44; Murray v. Smith, 152 N. Y. S. 102; Elyea v. Lehigh Salt Mining Co., 61 N. E. 992; Cook on Corporations (6 Ed.) 606.   The third contention of appellant is that it was the duty of the president to go out on the road as a common salesman and sell goods.   This is not true.   Fletcher's Cyclopedia of Law, secs. 2740, 2741; Barenstecher v. Hoff Brau, 135 Pac. 518; Georgetown Merc. Co. v. First National Bank, 165 S. W. 73. It is also claimed that the act of the board of directors fixing the salary of the president at $6,000 included all the pay he was to have for services as president and outside services as well.   The parties have not so interpreted the contract and did not enter into it with that understanding.   Seitz v. Union Brass & Metal Mfg. Co., 189 N. W. 586.   (5)   The by-laws of the corporation do not prevent the stockholders from reviewing or ratifying the acts of the board of directors.   Kirwin v. Washington Match Co., 79 Pac. 928; Steeple v. Max-Kuner Co., 208 Pac. 44; Fletcher's Cyclopedia Corporations, sec. 2747.   (6)   Appellant has cited a long list of authorities to the effect that in order to be binding the ratification of the stockholders must be unanimous.   By examining the cases, however, it will be found in nearly every instance that the taking of the funds amounted to an embezzlement or was a willful fraud or the act was abso-

lutely *ultra vires*. On the other hand, a number of the authorities cited by appellant under that point, fully recognize and sustain respondent's contention. Endicott v. Marvel; Klein v. Brewing Association; Flynn v. Brooklyn, supra.

DAVID E. BLAIR, J.—Suit in equity by a minority stockholder to compel directors to restore to the corporate treasury moneys paid out as a bonus or deferred salaries to officers and employees of the corporation, including certain of such directors. Judgment below was for defendants and plaintiff has appealed to this court.

Defendant Juvenile Shoe Corporation is organized under the laws of Missouri, and was made a defendant because said corporation is said to be under the domination and control of the other defendants, composing its board of directors, who "would refuse to institute any action for relief in the premises." It is not contended that the petition does not state a cause of action, and hence the allegations thereof will only be noticed if they become material.

Defendant corporation is and was engaged in the manufacture of shoes at Carthage, Missouri, and Beloit, Wisconsin, with its principal office at St. Louis, Missouri. Defendant C. F. Reith was president and a large stockholder. The authorized capital stock consisted of 5,000 shares of preferred stock and 5,000 shares of common stock of the par value of $100 per share, or a total authorized capital stock of $1,000,000. The preferred stock entitled the holder to seven per cent cumulative dividends, with preference in disposition of assets. Preferred stock carried no voting power, except for failure of the corporation for two years to pay dividends, and was subject to redemption upon stated terms. The common stock carried the ordinary provisions, save as affected by the provisions of the preferred stock. At the time of the trial 3500 shares of the common stock and 2,000 shares of the preferred stock were issued and outstanding.

Defendant C. F. Reith was president of the corporation, and he and the other individual defendants constituted the board of nine directors. In the year 1918 said Reith and the superintendent of each plant of the corporation were voted a bonus or deferred-salary payment by the board of directors. Five directors were necessary to constitute a quorum. Reith's presence and vote were necessary to make the five and his vote was recorded for the bonus. He then received $3,900, and Alden and Bean, directors named in the petition as defendants, were each paid $1,000. Such bonuses were authorized by the board in September, 1918, and were fixed and ordered paid at a meeting of the board on January 18, 1919. At the January, 1919, meeting the salary of defendant Reith for 1919 was fixed at $6,000. The by-laws of the corporation empowered the corporation to fix the salaries of all officers and employees. The minutes of the meeting of the board of directors do not show that the salary of any other officer or employee, except that of Reith, was fixed by the board of directors for 1919. The exact amounts paid during 1919 to defendants McCall, Alden, Scheurer and Bean were stipulated in the record, but need not be detailed. About the close of 1919, said defendants were being paid the following sums per month; McCall, $250, Alden, $300; Scheurer, $300; Bean, $300.

At a meeting of the directors on November 29, 1919, the following resolution was adopted:

"Resolved, First, that the president of the company be, and hereby is authorized to pay as a deferred salary payment, various sums of money to various employees not to exceed in the aggregate the sum of fifty thousand ($50,000) dollars, which employees and which amounts to be paid each to be determined by the president in view of the service rendered by each; that is, payment is to be considered as part of each employee's salary for the present fiscal year."

At a meeting of the board of directors on January 26, 1920, the apportionment of the $50,000 bonus or de-

ferred-salary payment, authorized November 29, 1919, was ratified and approved as made by defendant Reith, as president. It appeared that said defendant apportioned $18,800 thereof to himself, $6,400 to defendant Alden, $6,400 to defendant Bean, $7,000 to defendant McCall, and $2500 to defendant Scheurer, or a total of $41,000. Smaller amounts, ranging from $500 down to $50, were apportioned and paid to heads of departments and lesser employees and amounted to $8,900.

At the directors' meeting on November 29, 1919, when the bonus or deferred-salary payment was authorized, a bare quorum of five directors was present, and included the defendant directors Reith and Alden. When the payments made were ratified and approved on January 26, 1920, six directors were present, including directors Reith, Alden, Bean and McCall, all of whom received substantial portions of said bonus or deferred-salary payment.

The petition in the case was filed January 27, 1921. On November 14, 1921, a special meeting of the stockholders of the corporation was held at its office in St. Louis, pursuant to the following notice:

"Notice is hereby given that a special meeting of the stockholders of the Juvenile Shoe Corporation of America will be held at the office of the company, 1627 Locust Street, Room 300, Advertising Building, St. Louis, Mo., on Monday, the 14th day of November, 1921, at the hour of nine o'clock A. M. for the purpose of voting upon a proposition to ratify the action of the board of directors on November 29th, 1919, and January 26th, 1920, in authorizing and paying $50,000 to the officers and employees of the company as a part of their compensation."

At said meeting the following resolution was adopted:

"Resolved, That the stockholders of the Juvenile Shoe Corporation of America ratify and approve the action of the board of directors and officers of the Juvenile Shoe Corporation of America as taken November 29, 1919, and January 26, 1920, in authorizing and paying

fifty thousand dollars to the officers and employees of the company as part of their compensation."

Apparently, preferred as well as common stockholders voted at such meeting. The tellers' report on the vote was as follows: "3248 shares of common stock and 1536 shares of preferred stock voted in favor of resolution, and 217 shares of common stock voted against the resolution."

The 217 shares of common stock, recorded as voting against said resolution, were voted by an attorney in fact of the plaintiff. Subsequently, all the stock, not represented in person or by proxy at said meeting, appears to have ratified the payment in one form or another.

After said stockholders' meeting was held, to-wit, on December 1, 1921, the defendant corporation, and defendants Reith, McCall, Alden, F. W. Drosten, W. G. Drosten and Schumacher, filed their separate amended answer, in which ratification of such bonus or deferred-salary payments by the board of directors is set up. Said answer admitted the payment by defendant Reith of the said sum of $50,000 to the officers and employees of the corporation. It alleged "that at the time all of said officers and employees were elected to office and assumed their duties, it was understood and agreed that the salaries paid to them were only a living or drawing account, and that at the end of the year if the company had been successful and had made money, additional sums would be paid to said officers and employees.

"The defendants further answering state that the said E. A. Alden and the other officers, except the said C. F. Reith, at the time they accepted their offices and entered into the employment of the defendant corporation, were receiving salaries largely in excess of the amount fixed for their compensation, and that the same was fixed and understood as above stated, that it was to be all the compensation said officers were to be allowed for the discharge of the duties as assigned to them under the by-laws, unless the corporation was successful and made money.

"The defendants further state that the said E. A. Alden, L. Bean, A. L. McCall and B. B. Scheurer performed, at the request of the defendant and with the understanding that the same should be paid for, services entirely outside of their duties as officers of the corporation; that all the employees who received said extra compensation received the same as a part of their compensation fixed at the time of their employment; that the said C. F. Reith as president of the corporation had his duties as such officer fixed and prescribed by the by-laws of the corporation, and that the eighteen thousand eight hundred dollars ($18,800) distributed to him was compensation for services which he rendered the corporation as a traveling salesman in selling goods in the different states of the Union and with the understanding and agreement on the part of the corporation and its officers that he was to be compensated therefor, and that the said eighteen thousand eight hundred dollars ($18,800) so paid to him was less than fifty per cent of what such services were fairly worth, and what the corporation would have had to pay for the same to any salesman who would have sold merchandise to the amount in value that was sold by the said defendant Reith."

The reply was a general denial.

The trial judge made the following finding of facts in the case:

"The court finds that the persons who received the $50,000 paid to them pursuant to the resolution of the board of directors of November 29, 1919, performed the services for which such payments were made, with the previous understanding that such payments would be made if the company was prosperous and able to pay, and that the payments made under said resolution to officers and directors were for services performed by them outside of the duties of their respective offices;

"That the company was prosperous during the year 1919 and that such prosperity was largely due to the services performed by the officers outside of the duties of their offices and by the heads of departments and

office force, resulting from such understanding: that if the company was prosperous, they would receive extra compensation;

"And the court finds that under the conditions and circumstances shown in evidence, the amounts paid for such extra services are and were reasonable, and that the policy adopted by the company as shown by the action of the board of directors and the stockholders and by the oral evidence, was an exceedingly wise policy, and that but for said policy the company would not have earned the money that was distributed under said resolution, and the court is clearly of the opinion that at the close of the year 1918, if the company had declined to adopt the policy it did, it would have lost the services of Mr. Reith as a salesman, and through the loss of Mr. Reith would not have procured the services of Mr. McCall, Mr. Alden, and other experienced persons, to manage and conduct the business of the company, and as a result would not only have failed to earn the money to meet all its obligations and pay dividends to its stockholders and conduct its extensive advertising program and have money left in its treasury to meet losses in 1920, as it did do, but in all probability would have been unable to successfully weather the financial storm and business depression of 1920.

"The court is of the opinion that the policy adopted by the company as evidenced by the resolution of the board of directors on November 29, 1919, as well as said resolution, was not fraudulent, or void, but that the company in adopting said policy, and the board of directors in passing said resolution, acted in good faith for the best interest of the company and its stockholders, and that after said payments were made and the board of directors ratified the act of the president in making such payments, and later the stockholders in meeting assembled, ratified such payments by an affirmative vote of all the stock except that held by plaintiff, it should not be held illegal, fraudulent or void.

"The court directs that this finding of facts and opinion of the court be filed and become part of the record in this case." (Signed) "J. D. Perkins, Judge, Division One, Jasper County Circuit Court."

We think the findings of the trial judge are abundantly supported by the weight of the evidence. It appears from the evidence that the gross profits of the corporation for 1919 exceeded $200,000. Something over $26,000 for depreciation and $24,000 for lasts, patterns and dies appears to have been charged off, reducing the net profits to approximately $150,000. Mr. Reith fixed the "gross earnings" at $213,000. If $51,000 be charged off of this amount the net earnings were $162,000. If the lower figure be taken as the net profits, there remained, after paying seven per cent dividends on the preferred stock ($14,000), and the bonus payment ($50,000), the sum of $86,000, which could have been applied as dividends upon the common stock or in excess of 24.5 per cent. However, the record does not show such a dividend to have been paid on the common stock. The minutes of the directors' meeting on January 26, 1920, show that the dividend upon the common stock, for the quarter ending December 31, 1919, was two per cent, or at the rate of eight per cent per annum. The year 1920 was an unprofitable one, and apparently some or all of the surplus of 1919 was absorbed in that year.

In addition to his other duties, defendant Reith devoted a large portion of his time to the business of selling the manufactured product of the corporation. He apparently was a very successful salesman, and sold approximately $2,000,000 worth of shoes in 1919. The subordinate officers and heads of departments, who shared in the 1919 bonus or deferred salary payment, are shown by the evidence to have been unusually loyal to the corporation and earnestly devoted in rendering service to it. Many of them worked at nights and on Sundays. The finding of the trial judge in regard to this is manifestly in accord with the evidence.

The prayer of plaintiff's petition is as follows:

"Wherefore, plaintiff invokes the equitable power of the court to require the individual defendants as directors of the corporate defendant to make and render an accounting to the plaintiff, and to the corporate defendant, of the funds so diverted and misappropriated as hereinbefore described, and that the corporate defendant have judgment against the individual defendants as joint tortfeasors for the recovery of the moneys of the corporation so wrongfully appropriated and diverted by the individual defendants, or that the plaintiff have judgment against the individual defendants as joint tortfeasors for her proportionate part of the funds so wrongfully appropriated and diverted as aforesaid as equity may require, for costs and for all proper relief."

For reversal of the judgment, plaintiff relies upon the following contentions: That defendant Reith's salary was fixed by the board of directors at $6,000 for 1919, and there was no formal action of the board in advance fixing additional compensation; that the oral agreement for additional compensation to Reith was void for lack of mutuality and for uncertainty and indefiniteness and imposed no obligation on the corporation; that the services performed by Reith were wholly within the scope of his presidential duties and he is entitled to no compensation therefor, except such as was agreed upon in writing in advance by formal action of the board of directors; that the pretended agreement between Reith as a director and the rest of the board on January 18, 1919, and November 29, 1919, is void because the same was authorized by his own vote, and is void morally and legally because Reith could not at the same time represent himself and the corporation; that it was morally and legally wrong for Reith to be permitted by the board of directors to appraise the value of his own services; that Reith, having participated in the board meeting which postponed the definite fixing of his salary and which fixed the amount actually named at $6,000, is entitled to no more and is estopped to claim more.

As to defendants Scheurer, Bean and Alden, it is contended that they were officers and directors and received regular salaries, and neither of them had any written agreement for further salary; that, if such services were within the scope of their duties, they were entitled to no additional compensation, because such compensation was not authorized by the articles of association or by-laws of the corporation or evidenced by formal written action of the board before the services were rendered; that if they rendered services outside the scope of their duties the alleged oral understanding was indefinite, uncertain, unmutual and not formally entered into by the board as a board, and the alleged agreement is void; that the board's action in appropriating $6,400 to defendant Alden was immoral and illegal, because his presence at the board meeting was necessary to make up the quorum.

As to the $8,900 distributed to other employees, plaintiff's contention is that the board made no agreement in writing covering the same, and that the alleged oral agreement was void for indefiniteness, uncertainty and lack of mutuality.

Plaintiff's general contentions are that the finding and decree are for the wrong party; that the bonus or deferred-salary payment constituted the giving away of the assets of the corporation, which could not be ratified by less than *all* the stockholders; that plaintiff is at least entitled to recover her proportionate part of the misapplied $50,000.

The payment of a bonus, when appropriately authorized, is not in itself a fraud upon dissenting stockholders. The practice has become common among large employers and tends to stimulate loyalty, faithfulness, activity and energy in employees and gives them a real interest in the business of the employer beyond the extent of such qualities reasonably to be expected where a definite and unfluctuating compensation is all such employees have the right to anticipate. The natural tendency of a bonus, the amount of which is contingent up-

on profits, is to build up that quality known as *esprit de corps.* It tends to produce profits beyond what may otherwise be expected. Hence, where the amount of the bonus is not unreasonably large, it tends to increase the profits of the employer as well as the compensation of the employed. It tends to make employees less wasteful of materials and more watchful of the interests of the employer, because employees thereby conserve their own interests. It tends to hold experienced employees in service, when employment is plentiful and employees scarce, and to reduce the annual turnover of labor, thereby making for permanence in the personnel of employees, avoids the necessity of and loss incurred in training new recruits, and builds up the average skill and efficiency of those employed. All these things are to the evident advantage of the employer.

In one form or another the practice is hoary with age. The farmer knows that the promise to his hired man of quitting early and the loan of a horse and buggy for the evening-off will produce a big day's work long before the early quitting time. The teacher knows that the prospect of a half-holiday, if there are no cases of tardiness, will insure the early arrival at school of every pupil, upon pain of the displeasure of his fellow students. So it is in industry. An expected bonus based upon results tends to discourage and expose employees who are inclined to be lazy, thoughtless, inefficient, and wasteful. Experience has demonstrated that the payment of a bonus works to the benefit of employer and employee alike and, within reasonable bounds, is advantageous to stockholders of corporations employing labor. Courts have recognized this and have given their sanction to the practice. [Roberts v. Mays Mills, 114 S. E. (N. C.) 530; Zwolanek v. Baker Mfg. Co., 137 N. W. (Wis.) 769.]

In volume 2 of Fletcher's Cyclopedia of Corporations, p. 2150, sec. 1201, it is said: "There may be circumstances under which a gift of property by a corporation would be a legitimate means of increasing or carrying on its business, and in such case would not be *ultra*

*vires.''* The text then cites as an illustration the payment of extra wages to employees out of undivided profits.

In an English case, cited by Fletcher (Hutton v. West Cork Ry. Co., 23 Chancery Div. 654), the syllabus, supported by the opinion, reads: "A company carrying on business has power, by the vote of a general meeting, to expend a portion of its funds in gratuities to servants or directors, provided such grants are made for the purpose of advancing the interests of the company.''

Plaintiff cites 4th Fletcher's Cyclopedia of Corporations, page 4012, as authority to the contrary. This, however, is in connection with the power of directors. In the same connection the author says: "The payment of such bonuses has been sustained in some cases, however, in connection with increases of salaries and as extra compensation.'' The only case denying the power of the corporation to pay bonuses, cited by Fletcher, is McNulta v. Corn Belt Bank, 164 Ill. 427. There the bonus was held illegal because authorized by the directors under an illegal by-law and because the alleged subsequent ratification by the stockholders was not voted by bona-fide stockholders. There is nothing in the case holding the payment of a bonus illegal when authorized under proper circumstances and for a lawful purpose.

We, therefore, conclude that the payment of a bonus may be legal or illegal according to the purpose for which and the circumstances under which same is authorized. We agree with the trial court that the bonus or deferred-salary payment, made in the case at bar, was beneficial to the corporation and not in itself a fraud upon the dissenting stockholders.

Courts will not substitute their judgment for that of the stockholders as to what is good business policy or as to what is beneficial to the corporation, absent evidence of fraud upon minority stockholders. There is no evidence of fraud in this case. When only one stockholder is objecting to the payment of the bonus out of the large number of preferred and common stockholders

and the dissenting stockholder owns only 217 shares of common stock out of 3500 shares of common and 2,000 shares of preferred stock, it is the most convincing proof, not only of the absence of fraud, but also of the benefits honestly and reasonably to be expected to flow from such practice.

Plaintiff has cited a large number of cases to the point that the ratification of the bonus payment by stockholders on November 14, 1921, was not binding on plaintiff. We have not the slightest doubt that, if such ratification had occurred prior to the filing of the petition, it would have been binding upon consenting and dissenting stockholders alike. Not one of the cases cited authoritatively touches the question of ratification *subsequent to the filing of the suit*. All are cases of fraudulent conduct.

In Von Arnim v. American Tubeworks, 74 N. E. (Mass.) 680, officers of the corporation upon a regular salary misappropriated corporate property for years and purposely concealed such misappropriation. No by-law and no vote of directors or stockholders were shown sanctioning such use of the corporate assets. The court said: ''Even if a majority of the stockholders consented to ratify an illegal use of its funds, their assent would not bind a protesting minority, or prevent them from obtaining appropriate equitable relief.'' There the use made of the corporate funds was clearly fraudulent.

In Godley v. Crandall & Godley Co., L. R. A. 1915D, 632, majority directors fraudulently voted themselves increased salaries. *After the commencement of the suit,* a majority of the stockholders, consisting of those who received the preferential payments, voted to ratify the action of the board of directors. It was held that such fraudulent payments could not be ratified so as to bind non-assenting stockholders. Nothing was said making any distinction between ratification before and after suit was filed.

In Pressed Brick Co. v. Schoeneich, 65 Mo. App. 283, an officer of the corporation wrongfully deposited funds

of the corporation in the account of a partnership, of which he was a member. The corporation was permitted to recover from the administrator of the partnership estate, after the death of such partner, notwithstanding a majority of the directors of the corporation ratified the action of such officer. It held that this could be done only by the *unanimous* vote of the stockholders.

Flynn v. Brooklyn City Ry. Co., 53 N. E. (N. Y.) 520, was a case of fraudulent leasing of street railroad property by authority of a majority of the stockholders. The petition did not allege the taking of appropriate steps by minority stockholders to procure relief within the corporation to annul the lease, and the petition was held insufficient.

In Klein v. Independent Brewing Assn., 83 N. E. 434, 23 Ill. 594, the directors fraudulently purchased property for the corporation from themselves, paying more than the property was worth. The majority of the stockholders attempted to ratify the purchase *after the suit was filed*. No point was made as to the time of such purported ratification. But the court said:

"It is not to be tolerated that the directors of a corporation owning and controlling a majority of its stock shall be permitted to cause their unlawful acts to be ratified by calling a stockholders' meeting, which they control as effectually as they do the board of directors, and causing a majority of the stock to be voted in favor of the ratification. If the acts complained of were unaffected by any unlawful and fraudulent motive and conduct, and it were a question simply whether the directors had exercised good judgment for the best interests of the corporation, a different rule would perhaps apply, for the directors and a majority of the stockholders have the right to control, direct, and manage the corporation."

In Continental Securities Co. v. Belmont, 51 L. R. A. (N. S.) 112, 206 N. Y. 7, 99 N. E. 138, the directors fraudulently transferred stock to defendants for a grossly inadequate consideration. The New York Court

of Appeals held that subsequent ratification bound by estoppel only the assenting stockholders.

In Bagshaw v. Eastern Union Ry. Co., 7 Hare, 114 (68 Eng. Rep. Reprint, 46), directors illegally used funds in unauthorized railroad construction. It was held that ratification by majority stockholders was no defense. Referring to Foss v. Harbottle, 2 Hare, 461, the vice-chancellor said:

"That case does not, I apprehend, upon this point, go further than this: that if the act, though it be the act of the directors only, be one which a general meeting of the company could sanction, a bill by some of the shareholders, on behalf of themselves and others, to impeach that act cannot be sustained, because a general meeting of the company might immediately confirm and give validity to the act of which the bill complains."

The excerpt indicates that ratification may be made after suit has been filed, if the act is capable of ratification.

In Theobald v. United States Rubber Co., 146 N. Y. Supp. 597, directors were charged with "wrongfully and unlawfully" taking and retaining money of the corporation, and certain other directors were charged with permitting such action. There was a purported ratification by stockholders. It was held that misuse of corporation funds for private purposes and gain could not be so ratified. The rule that stockholders may ratify an act of the directors which is not void, but merely voidable, was fully recognized.

In Endicott v. Marvel, 81 N. J. Eq. 378, there was no ratification by stockholders of the action of directors in permitting some of their body to loan money to the corporation, taking double security as collateral without provision for redemption. Action by dissenting directors and by stockholders for an accounting and to redeem was sustained. The court assumed that the power of the stockholders to ratify still existed (that is, after suit was filed) if the action could be ratified.

Brown v. De Young, 47 N. E. (Ill. Sup.) 863, was a suit by stockholders against an officer and director who was paid an *unauthorized* salary. It was held that non-assenting plaintiffs were entitled to recover their proportion. The general rule that such refund should be to the corporation was recognized, but the peculiar facts made a distinction in that case.

In Matthews v. Headley Chocolate Co., 100 Atl. (Md.) 645, transferees of stock, owned by holders who participated in the payment of fraudulently excessive bonuses and salaries to officials, were not permitted to share in the recovery from offending officials. Following Brown v. De Young, supra, non-assenting stockholders were permitted to recover their proportionate part individually, since recovery to the corporate treasury would have enabled such transferees of stock, previously held by assenting directors, to share in the recovery. There was no question in the case of ratification by a stockholders' meeting.

In McConnell v. Combination Min. & Mill Co., 76 Pac. (Mont.) 194, defendants were charged with fraudulent misappropriation of corporate funds. On plaintiff's appeal the judgment for defendant was reversed. Alleged ratification by stockholders *after suit was filed* was held to have no signification, *because no notice was given that such ratification would be* proposed. At such stockholders' meeting there was only a small attendance and most of the stock was represented by proxies.

The foregoing cases are those relied upon by plaintiff as authority for the proposition that the stockholders of the defendant corporation in the case at bar could not ratify the action of the directors in making the bonus or deferred-salary payments to Reith and other directors and employees. It will be noted that in every case discussed the action of the directors was fraudulent or illegal and disadvantageous to the corporation. Other cases are cited by defendants, a few of which cases will be noticed.

In Booth v. Beattie, 118 Atl. (N. J.) 257, it was held that a resolution of the stockholders fixing extra compensation of directors was not voidable at the option of dissenting stockholders, and will be sustained unless disadvantageous to them. It was there said that additional compensation is "practical, commercially sound, and obtains in corporate management."

In Russell v. Patterson Co., 232 Pa. 113, the action of directors in voting increased salaries to two of their number was held only voidable, if the increase was reasonable and honest, and that such action could be ratified by majority vote of the stockholders, and that, as stockholders, the interested directors had the right to vote upon such ratification.

In Sotter v. Coatesville Boiler Works, 101 Atl. (Pa.) 744, directors voted bonuses to themselves and their action was ratified at a stockholders' meeting. It was held that the stockholders, including such interested directors, had full power so to ratify where no fraud was involved.

We are satisfied that the stockholders in the case at bar had full power to bind minority stockholders by their ratification at a stockholders' meeting, called for that purpose. Primarily, the action brought by the plaintiff is for the benefit of the corporation. The stockholders must be held to have power to dispose of the subject-matter of the suit by such ratification, even after suit is filed, unless plaintiff had the right, because of illegal or fraudulent action of the directors and majority stockholders, to maintain an action in her own name for recovery of her proportion of the money paid out as bonus or deferred salaries. But the payment was not fraudulent. We think it was prudently and honestly made for the benefit of the corporation. The action of the directors was voidable, at most, and could be ratified by the stockholders.

Plaintiff has cited no authority to the proposition that ratification, after suit filed, is ineffective to dispose of a suit filed for the benefit of the corporation. It is entirely reasonable and just that the stockholders should

307 Mo.—7.

have such power to ratify action of the directors, taken for the benefit of the corporation, even after suit has been filed. In filing a suit of that character the plaintiff took the chances of subsequent ratification and cannot complain thereof. There is, therefore, nothing left upon which can be based a recovery by plaintiff for her proportionate part of such bonus payment, as alternately prayed for in her petition.

This view of the case makes it unnecessary to consider other contentions made by plaintiff as ground for reversal of the judgment below. The reasons urged, if sound, only show that the acts of the directors were *voidable,* and not *void.* It follows that such judgment should be and it is affirmed. *White, J.,* concurs; *Walker, J.,* dissents.

PER CURIAM:—The foregoing opinion of DAVID E. BLAIR, J., is adopted as the opinion of Court in Banc. All concur, except *Ragland, J.,* who dissents, and *Walker, J.,* absent.