CROWE v. CONSOLIDATED LUMBER CO.

1. CORPORATIONS — MAJORITY OF STOCKHOLDERS CONTROL, IN ABSENCE OF FRAUD.

> The majority of the stockholders of a corporation have the right to manage and control the corporate business, and, in the absence of fraud, their action is binding on the minority.

2. SAME—MAJORITY OF STOCKHOLDERS MAY NOT RATIFY FRAUD OF DIRECTORS.

> A majority of the stockholders of a corporation could not ratify a fraudulent use of the corporate funds by its directors, nor could the majority compromise a lawsuit brought to compel such directors to restore to the corporate treasury funds fraudulently appropriated, unless in doing so the majority acted honestly and in the interests of the corporation.

3. SAME—SALE OF CLAIM—GOOD FAITH.

> In a suit by minority stockholders against certain directors of a corporation for the restoration to the corporate treasury of funds claimed to have been fraudulently

[1]Corporations, 14 C. J. § 1292; [2]Id., 14a C. J. § 2236 (Anno); [3]Id., 14a C. J. § 1931; § 1940 (Anno); 7 R. C. L. 308; 2 R. C. L. Supp. 350; 6 R. C. L. Supp. 441.

appropriated, the petition of one claiming to be the purchaser of said claim from the corporation and praying to be substituted as sole plaintiff in said suit, was properly denied by the court below, where the record fails to show that said sale was made in good faith.

Appeal from Schoolcraft; Fead (Louis H.), J. Submitted April 19, 1927.  (Docket No. 121.)  Decided June 6, 1927.

Bill by William S. Crowe and others against the Consolidated Lumber Company and others for an accounting.  John E. Butler intervened as a party plaintiff and moved to be substituted as plaintiff in the suit. From an order denying the motion, he appeals.  Affirmed.

*William J. Morgan* and *Frank R. Warner,* for plaintiffs.

*A. A. Keiser,* for appellant.

McDONALD, J.   This is an appeal from an order of the circuit court for Schoolcraft county, Michigan, denying the petition of John E. Butler to be substituted as the sole plaintiff in the above entitled cause.   The plaintiffs, twelve in number, are minority holders of the second preferred stock of the defendant corporation.   After written demand on the company to institute suit against two of its directors, Wilmer T. Culver and Leo C. Harmon, and following its refusal, these plaintiffs filed their bill, in which it is charged:

*First,* That Culver and Harmon, who owned a large majority of the stock, and who controlled the election of the board of directors and the action and policy of the corporation, unlawfully paid with corporate funds losses which they incurred on their personal indorsement of paper of the Cloverdale Cattle Company and of the Blaney Land Company, aggregating $54,435.16.

*Second,* That Culver and Harmon fraudulently paid with corporate funds $5,950 for the redemption

at a premium of $10 a share of 595 shares of first preferred stock, which they had purchased at a discount; the corporation at the time of the redemption being insolvent.

*Third,* That they wrongfully retained a secret profit of $50,000 from the sale of corporate property.

*Fourth,* That they unlawfully took for themselves $99,750 in excess of their authorized salaries.

*Fifth,* That they paid with corporate funds for the benefit of the defendant Culver $105,228.96 in dividends on the first preferred stock while the company was insolvent, without surplus or profits available therefor, and without the dividends having been declared and voted for.

The prayer of the bill requested that the defendants come to an accounting and return to the treasury of the company the amounts found to be due on account of the various transactions alleged. The defendants Culver and Harmon filed sworn answers in which they denied the allegations of the bill.

When this controversy arose the company was selling its assets preparatory to closing out its business. For that purpose a liquidating committee had been appointed. After this suit was instituted the liquidating company, acting on authority of the corporation, sold and assigned to John E. Butler the claims and cause of action which the plaintiffs are endeavoring to prosecute against defendants Culver and Harmon. The consideration for the sale was $5,500. After this sale the defendant company filed a motion to dismiss the plaintiffs' bill on the ground that as it had sold the subject-matter of the suit, it no longer had any interest in the litigation. Mr. Butler filed a petition based on the assignment of the cause of action to him, and asked for his substitution as sole plaintiff in the case. The petition alleged that the sale to him was made on authority given to the corporate officers and the liquidating committee by the unanimous action of the board of directors and a majority

of the stockholders; and thereafter was approved by the board and ratified by the stockholders by a vote in excess of two-thirds of the outstanding capital stock.    In answer to the petition, the plaintiff alleged that in view of the fact that the defendants Culver and Harmon own and control more than two-thirds of the capital stock, the action of the board of directors and the stockholders in empowering and ratifying the sale to Mr. Butler was in effect the action of Culver and Harmon; that the sale was made for their benefit, in fraud of the rights of the corporation and of the plaintiffs, and with the intention of dismissing the suit and preventing inquiry into their fraudulent conduct of the affairs of the company.

The main contention of the petitioner is that the action of a majority of the stockholders in ratifying the sale is binding on the minority.

It is not necessary to cite authority in support of the proposition that the majority of the stockholders of a corporation have the right to manage and control the corporate business; and that, in the absence of fraud, acting within their authority, their action is binding on the minority.

"The majority are to rule so long as they do so without fraud and within the powers of the corporation."    Cook, Principles of Corporation Law, p. 400.

In the instant case the question of fraud is involved. A majority of the stockholders could not ratify a fraudulent use of the corporate funds by its directors; nor could the majority compromise a lawsuit brought to compel such directors to restore to the corporate treasury funds fraudulently appropriated, unless in doing so the majority acted honestly and in the interests of the corporation.    The courts will always protect the corporation and the minority stockholders from the fraud of the majority.    In *Klein* v. *Independent Brewing Ass'n,* 231 Ill. 594 (83 N. E. 434),

cited in *Putnam* v. *Juvenile Shoe Corp.*, 40 A. L. R. 1412 (307 Mo. 74, 269 S. W. 593), the court used the following language, which we think aptly applies to the instant case:

"It is not to be tolerated that the directors of a corporation owning and controlling a majority of its stock shall be permitted to cause their unlawful acts to be ratified by calling a stockholders' meeting, which they control as effectively as they do the board of directors, and causing a majority of the stock to be voted in favor of the ratification. If the acts complained of were unaffected by any unlawful or fraudulent motive and conduct, and it were a question simply whether the directors had exercised good judgment for the best interest of the corporation, a different rule would perhaps apply, for the directors and a majority of the stockholders have the right to control, direct, and manage the corporation."

In denying the petitioner's application for substitution, the circuit judge said:

"It is not conceivable that the majority, including the accused stockholders, after suit brought by the minority and over their protest, may sell the claim for an infinitesimal part of the misappropriation charged under oath in the bill, without at least a showing of good faith and adequate price as will satisfy the court that the rights of the minority have been protected."

We think that the circumstances under which Mr. Butler purchased this lawsuit call upon him for some showing as to his good faith. He lives in a distant State. He is a lawyer friend of the attorney representing the defendant Culver. He was not present at the sale. Mr. Culver's attorney represented him. He did not sign or swear to the petition for substitution. It was signed for him by Mr. Culver's attorney. It does not contain any statement that he bought the cause of action in good faith, or that he intended to prosecute it; and he offered no evidence tending to

rebut the *prima facie* case made by the unusual circumstances surrounding his purchase. We would be less intelligent than we care to admit if we believed that Mr. Butler bought this cause of action with any intention of prosecuting it. It is rather significant that immediately after it had sold the cause of action to the petitioner, the defendant company filed a motion to dismiss the suit; and that the petitioner did not oppose the motion. In view of the circumstances, we are not able to square his actions and those of the company with an honest intention on the part of either. In the absence of any proof to the contrary, the circumstances sufficiently establish bad faith on the part of Mr. Butler and the directors of the company, in making the sale; and because of this, together with the fact that a majority of the stockholders could not ratify or condone the fraud complained of, the action taken was not binding on the minority. We think that the petitioner has not made such a showing as entitles him to an order for substitution.

In disposing of the matters here involved, we have not discussed the right of the plaintiffs, as minority stockholders, to maintain this suit, because of their indirect interest in the outcome. That question is interestingly discussed by Mr. Cook in his book on Principles of Corporation Law, p. 400; also see annotations to *Putnam* v. *Juvenile Shoe Corp., supra.*

The order of the circuit court is affirmed, with costs to the plaintiffs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.