**William TRIPLETT and Thomas Loughead, Appellants,**

v.

**GRUNDY ELECTRIC COOPERATIVE, INC., a corporation, Paul Hiatt, Cliff Stanton, Dale Porter, Albert Reeves, Clem Cleeton, Roger Williams, Charles Mack, and Wayne Rhoades, as members or former members of the Board of Directors of Grundy Electric Cooperative, Inc., a corporation, Respondents.**

No. 24135.

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

L. E. Atherton, Milan, for appellants.

Phil Hauck, Pickett, Andereck & Hauck, Trenton, for respondents.

HUNTER, Judge.

Appellants William Triplett and Thomas Loughead, on August 4, 1962, brought a declaratory judgment action against Grundy Electric Cooperative, Inc., and certain members and former members of its Board of Directors asking in Count I that the court determine that certain payments made to the directors are illegal under Section 394.-140 RSMo. 1959, V.A.M.S.,[1] and the By-Laws of the Cooperative, and that the Cooperative is without power to continue making such payments. In the second count appellants sought an accounting of these payments to the end that any sums received by respondents be restored.

Respondents filed a motion to dismiss on the ground there was no genuine issue as to any material fact, that the matter was moot and that they were entitled to judgment as a matter of law. As a result of a hearing on that motion the trial court ruled the controversy had become moot, and entered judgment for defendants. This appeal followed.

The pertinent facts as developed by the pleadings and at the hearing on the motion to dismiss are undisputed. Grundy Electric Cooperative, Inc., of Trenton, Missouri, is a rural electric cooperative, deriving its existence from and being subject to the statutory provisions known as "The Rural Electric Co-operative Law", chapter 394, RSMo. 1959, V.A.M.S. Appellants are two of the many hundred members of the co-operative.

According to the petition for declaratory judgment, "In 1956 the board of directors * * * voted a $20.00 per diem and expenses when attending meetings of the board of directors or when representing the cooperative at meetings, (of) the Missouri State Rural Electrification Association, the National Rural Electrification Association, or meetings called by the Rural Electrification Administration. * * * The board of directors caused to be paid the expenses and per diem of various directors who attended various meetings other than meetings of the board of directors in Trenton, Missouri, some of which meetings which a portion of the board attended were in Missouri, Arkansas, Oklahoma and Louisiana and expenses of certain of the directors were paid to attend the national meeting of the National Rural Electric Cooperative Association in St. Louis, at Washington, D. C., and in Dallas, Texas * * *."

1. All statutory citations are to V.A.M.S.

Four days after appellants filed their present suit, and in direct response to it, at a regular meeting of respondent Cooperative with a quorum present, the present suit was explained to those attending. We quote from the minutes of that meeting: "The President continued with the business session of the meeting and advised that recently, a lawsuit in the nature of a Declaratory Judgment action had been commenced by William Triplett and Thomas Loughead in the Circuit Court of Grundy County, Missouri, against the Cooperative and all of the present directors of the Cooperative except Archie Hampton and Byron Grisamore, and including a past director, Clem Cleeton. He explained that the general nature of the litigation was to question the amount of expenses and per diem received by the Directors, since 1956, for the attendance by said Directors, while representing the Cooperative, at meetings called by the Missouri State Rural Electrification Association, the National Rural Electrification Association, regional meetings of the Rural Electrification Association and other related meetings, which require travel to places other than Grundy County, Missouri. He advised that it had been the policy of the Board of Directors since 1956 to receive the sum of $20 per diem and expenses when attending the aforesaid meetings on behalf of the Cooperative.

"At this point, Mr. Glen Daily, a member of the Cooperative who was present at the meeting, obtained the floor and made the following motion:

"RESOLVED: That those persons who are the Directors and employees of the Cooperative are encouraged to attend meetings conducted by the Rural Electrification Administration, and the State, Regional and National Associations with which the Cooperative is associated for the purpose of representing the Cooperative, and to better enable them to carry out their respective duties on behalf of the Cooperative; and

"RESOLVED: That compensation heretofore or hereinafter approved by the Board of Directors for attendance by such persons at such meetings is hereby ratified and authorized by the membership of this Cooperative. Said motion as made was then seconded by Elmer Johnston, a member of the Cooperative who was in attendance at the meeting.

"Mr. Eugene E. Andereck, one of the counsel for the Cooperative, being in attendance at the meeting, was then called upon to explain the significance of the resolution offered by Mr. Glen Daily. He advised that cooperatives throughout the United States were expected to make it possible for Directors and others who were employees of the Cooperative to attend various meetings such as workshops, institutes and Rural Electrification Association meetings, whether on the national, regional or state level; that it was desirable to have representatives of the Cooperative attend said meetings to better enlighten them on the problems pertaining to the affairs of the Cooperative and to be in a better position to serve in their respective positions in dealing with said problems.

\* \* \* \* \* \*

"The inspectors of election \* \* \* certified that proposition number three, the resolution ratifying and authorizing compensation to Directors and employees of the Cooperative for attendance of meetings conducted by the Rural Electrification Administration, the State, Regional and National Associations with which the Cooperative is associated for the purpose of representing the Cooperative, as heretofore or hereinafter approved by the Board of Directors, was approved and adopted by a majority vote of the members of the Cooperative; the vote being 674 for the resolution and 56 opposed to the resolution." \* \*

"The President further declared that the resolution for compensation of Directors was accepted by a majority of the members of the Cooperative voting at this meeting."

At the August 2, 1963 Annual Meeting the minutes of the 1962 Meeting were read

in full and were approved by the Membership of the Cooperative.

The trial judge in entering judgment for defendants by memorandum stated, "The purpose of the suit was to have a judicial declaration that the outlay had been made without the approval of the members, and, if so, to require the directors to refund it. Plaintiffs' only legitimate interest in the affair, in other words, was to protect the Co-op's treasury from the drain of unauthorized disbursements. The suit was proper for that purpose. But it did not afford the only means by which that result could be achieved. The members of the Co-op could protect themselves against unauthorized disbursements, and one method of doing so was to supply the necessary authority. That was the method the statute contemplated. No payment complained of here was either violative of public policy or inherently evil; it was simply 'defective from a failure to observe in its execution a requirement of law enacted for the benefit or protection of a certain class,' viz., the members themselves, and 'the parties for whose benefit the requirement was enacted may ratify it.' 19 C.J.S., Corporations, Section 968, p. 424. This they did. Whatever defect may have stemmed from the failure to authorize the outlays in advance was removed by the subsequent approval of them—by the formal ratification of them.

"In effect, therefore—indeed, in fact— there has been what amounts to a full compliance with plaintiffs' demands, or at any rate a complete satisfaction of any proper interest they may have had in the matter, and hence 'no justiciable controversy remains in the case.' "

Appellants state the trial court erred in its ruling and that the issues on appeal are (1) in view of Section 394.140 RSMo. 1959, V.A.M.S., and the By-Laws of the Cooperative, does the Board of Directors of the Cooperative have power to compensate the directors for attending meetings other than meetings of the Board held in Trenton, Mo.; and (2) if the Board has such power could the By-Laws be amended to ratify past expenditures for attending such meetings as well as future ones. We address ourselves to these two contentions of appellants.

Section 394.080 sets forth the broad powers of a rural electric cooperative whose function may be generalized as the providing for and the supplying of electric energy and promoting and extending the use thereof in rural areas. Subsections 12, 13, and 14 thereof provide the cooperative is authorized: "(12) To conduct its business and exercise any or all of its powers within or without this state; "(13) To adopt, amend and repeal by-laws; and "(14) To do and perform any and all other acts and things, and to have and exercise any and all other powers which may be necessary, convenient or appropriate to accomplish the purpose for which the co-operative is organized." Section 394.110 provides, "The original bylaws of a co-operative may be adopted by its board of directors or stockholders. Thereafter bylaws shall be adopted, amended or repealed by its members. * * *"

Mentioned Section 394.140 provides that "1 The business and affairs of a co-operative shall be managed by a board of not less than five directors. * * * Without approval of the members, directors shall not receive any salaries for their services as directors. The bylaws may, however, provide that a fixed fee and expenses of attendance, if any, may be allowed to each director for attendance at each meeting of the board of directors. * * * 6 The board of directors may exercise all of the powers of a co-operative except such as are conferred upon the members by this chapter, or its articles of incorporation or bylaws."

Of particular note is Section 394.310 which provides, "This chapter shall be construed liberally. The enumeration of any object, purpose, power, manner, method or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods or things."

The only by-law provision deemed pertinent by appellants is contained in Section 5 which provides: "Compensation. Directors as such shall not receive any salary for their services, but by resolution of the board of directors, a fixed sum and expenses of attendance, if any, may be allowed for attendance at each meeting of the board of directors."

It is appellants' specific contention that Section 394.140 and the Cooperative's by-law so limit compensation to directors that the action of the Board of Directors allowing themselves per diem and expenses for attending anything other than the meetings of the Board of Directors in Trenton, Missouri, was illegal and void.

■ It is the general rule that the Directors of a corporation are not entitled to any compensation or salary for performing the usual and ordinary duties pertaining to their office unless compensation for such services is provided for in the charter (statute) or authorized by a by-law or resolution of the board of directors before the services are rendered. 5 Fletcher, Corporations, Section 2109, page 474; O'Brien v. John O'Brien Boiler Works Co., 154 Mo.App. 183, 133 S.W. 347; Ferrenbach v. Edward Fehlig & Co., Mo.App., 80 S.W.2d 705.

We first look to the mentioned statutes to determine if among the corporate powers is the power to pay directors compensation, including a fixed fee for attending on behalf of the corporation meetings, other than the board of directors meetings, and for reimbursements of the expenses incurred as a result of such attendance. Our duty is to ascertain the legislative intent as expressed in the statutes.

■■ By applying the usual and recognized rules for ascertaining legislative intent we find that Section 394.140 provides the members of the Cooperative the power and authority to pay directors compensation for attending such meetings and for reimbursing their resultant expenses. That section states, *"Without approval of the members,* directors shall not receive any salaries for their services as directors." (Emphasis ours.) Giving this provision the liberal construction legislatively required by Section 394.310, the reasonable intendment of the provision is that *with approval of the members* the directors may receive salaries for their services as members. This is a common sense construction designed to permit the Cooperative to carry out its functions and responsibilities in a modern, fast moving society where knowledge and improved skills may be obtained through attendance at such meetings as are here in question. We think this construction expresses the legislative intent.

■ Appellants contend the above quoted sentence must be read in the light of the following sentence, and that it is limited thereby. We agree that all of the statutory provisions of Chapter 394 concerning rural electric cooperatives must be read together in ascertaining the legislative intent, but we do not agree that such a reading results in the limitation appellant suggests. The following sentence, "The by-laws may, however, provide that a fixed fee and expense of attendance, if any, may be allowed to each director *for attendance at each meeting of the board* of directors" has no application to fixed fees and expenses for directors attending national, regional or state meetings or conventions which are *not meetings of the board of directors of this cooperative.* (Italics ours.) Nor does this sentence limit or prohibit the otherwise existing power or authority of the corporation, properly exercised, to pay a fixed fee and expenses to directors attending meetings that are in the interest of the cooperative and which are not board of director meetings of the cooperative.

■ Nor does Section 5 of respondents' by-laws prohibit the cooperative from making the questioned fee and expense payments. A corporation's by-law if repugnant to statute must give away to the statute's superior authority. The Section 5 by-law provision that "Directors as such shall not

receive any salary for their services" must be read in the light of the statute permitting directors' salary for services with the approval of the members of the cooperative. So read, the by-law provision means that without the approval of the members of the cooperative the directors shall not receive any salary for their services as directors (except by resolution of the board a fixed sum and expenses may be allowed for attendance at each meeting of the board.) Thus, the clear implication of the by-law provision is that with the approval of the members of the cooperative the directors may receive such salary.

We come to appellants final question, could the resolution of the members of the Cooperative "be made retroactive to any payments prior to the adoption of the resolution in 1963?" Here, the directors did not have the power or right to vote themselves compensation and expenses for their attendance at the mentioned meetings or conventions for such action was beyond the scope of their powers. However, under the presented circumstances where there is no fraud or overreaching involved and the services being expensed and compensated were plainly in the interest of the Cooperative, the action of the directors was at most only voidable, and not void.

It is the general rule that any act of the board of directors beyond the scope of their authority fixing or increasing compensation and providing for reimbursement of actual and reasonable expenses incurred in carrying out the affairs of the company may be ratified by the stockholders when the stockholders could have originally authorized such act, and this may be done even after suit is filed. 5 Fletcher, Cyc Corporations, Section 2139, page 572; Williams v. Williams Insulation Materials, Inc., 91 Ariz. 89, 370 P.2d 59; Edmonson v. First Nat. Bank of Birmingham, 256 Ala. 449, 55 So.2d 338; Kerbs v. California Eastern Airways, Inc., 33 Del. Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839; Flight Equipment and Engineering Corp. v. Shel-

ton (Fla.), 103 So.2d 615. Ratification of the act under such circumstances is considered tantamount to original authority and is as binding as if prior authority had been given. In 19 C.J.S., Corporations, § 1016 c, page 492, it is stated, "As a general rule, in the absence of actual fraud, the stockholders may ratify any act or contract of any other body or agency of the corporation which they might have authorized in the first instance. Accordingly, if they have knowledge of the facts at the time of ratification, they may ratify constituent acts done by the directors outside the scope of their powers, and which do not pertain to the ordinary corporate business, or they may ratify informal or irregular action of the board of directors * * * which is within the corporate powers. * * * A ratification by stockholders at a stockholders' meeting may be by * * * a vote of the majority where the act might have been authorized by a majority in the first instance. * * *" Loc. cit., § 1023, page 505, "As in other agencies, as a general rule the ratification of an act or contract which has been entered into on behalf of a corporation, without proper authority therefor, relates back to the time when the act or contract was entered into. * * *"

In 13 Am.Jur., Corporations, Section 979, page 931, it is expressed: "Generally speaking, those who could originally have authorized, on behalf of the corporation, a certain act or contract can ratify it after it has been done or made without authority. For instance, any act of a board of directors which the stockholders could originally have authorized may be ratified by the stockholders. Moreover, unanimous consent of all the stockholders is not necessary to the ratification of a voidable contract which a majority of them could have authorized in the first instance. Acts done in the interest of the corporation which are voidable only—that is, not fraudulent or ultra vires—may be ratified by a majority of the shareholders." To the same effect see, Beazell v. Farmers' Mut. Ins. Co., 214 Mo.App. 430, 253 S.W. 125. In 1 Hornstein, Corporation

Law and Practice, Section 386, page 497, it is expressed, "Finally, it should be remembered that ratification by the shareholders can always authorize payment to a director."

In Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593, 598, 40 A.L.R. 1412, in discussing the stockholders ratification of directors' action in paying a bonus to officers and directors of the corporation, our Supreme Court en Banc said: "Primarily, the action brought by the plaintiff is for the benefit of the corporation. The stockholders must be held to have power to dispose of the subject-matter of the suit by such ratification, even after suit is filed, unless plaintiff had the right, because of illegal or fraudulent action of the directors and majority stockholders, to maintain an action in her own name for recovery of her proportion of the money paid out as bonus or deferred salaries. But the payment was not fraudulent. We think it was prudently and honestly made for the benefit of the corporation. The action of the directors was voidable, at most, and could be ratified by the stockholders. Plaintiff has cited no authority to the proposition that ratification, after suit filed, is ineffective to dispose of a suit filed for the benefit of the corporation. It is entirely reasonable and just that the stockholders should have such power to ratify action of the directors, taken for the benefit of the corporation, even after suit has been filed. In filing a suit of that character, the plaintiff took the chances of subsequent ratification and cannot complain thereof."

 The trial court declared and ruled that the action of the stockholders in ratifying the action of the directors made the matter before the court moot, dismissed plaintiffs' petition and enter judgment for defendants. It is the general rule that courts will not decide a moot question or render a purely advisory opinion unless it is one of great public importance under conditions that may in substance be repeated at any time. Further, a case orig-

inally presenting an existing controversy may become moot by causes occurring after the commencement of the action. Lawyers' Association of St. Louis v. City of St. Louis, Mo.App., 294 S.W.2d 676. However, we do not consider the instant matter moot because after the stockholders' meeting ratifying the mentioned payments it was still appellants' claim that the stockholders' action did not cure the irregularity of the payments of the fixed fee and expenses to the board of directors. That controversy has continued to exist between the parties. We have taken up, considered and ruled upon the merits of appellants' contentions in their declaratory judgment action as prayed in their petition, and in so doing have reached the same ultimate result as the trial court; namely, that appellants' suit is without merit. The judgment for defendants is affirmed.

All concur.