No. 25,005.

THE NATIONAL RESERVE LIFE INSURANCE COMPANY, *Plaintiff*, v. GEORGE GODFREY MOORE, AS PRESIDENT OF THE NATIONAL RESERVE LIFE INSURANCE COMPANY, *Defendant*.

### SYLLABUS BY THE COURT.

1. LIFE INSURANCE COMPANY—*May Erect Office Building Larger Than Its Immediate Needs Require.* A life insurance company incorporated under the laws of this state may erect an office building, for the use of the company, larger than its immediate necessities require.

2. SAME—*Cannot Take Title to Real Estate in Name of Superintendent of Insurance and Deposit That Title as Part of Its Reserve Fund.* A life insurance company incorporated under the laws of this state cannot use its reserve fund for the erection of an office building nor take the title to real property in the name of the superintendent of insurance of the state and deposit that title as a part of its reserve fund.

Original proceeding in mandamus. Opinion filed October 6, 1923. Writ denied.

*Robert Stone, George T. McDermott, Robert L. Webb,* and *Beryl R. Johnson,* all of Topeka, for the plaintiff.

*E. D. McKeever,* and *Arch M. McKeever,* both of Topeka, for the defendant.

The opinion of the court was delivered by

MARSHALL, J.: This is an original proceeding in mandamus to obtain a declaratory judgment concerning the power of a life insurance company to erect an office building for its use and the power of the company to use a part of its reserve fund for the erection of the building.

The petition and alternative writ of mandamus allege that the rooms now occupied by the company in the city of Topeka are inadequate; that the company cannot secure adequate office rooms in the city; that the company has an opportunity to purchase a tract of ground on which to construct an office building; that it would be good business sense to erect the building; and that the board of directors of the company has adopted the following resolution:

"WHEREAS, the quarters now occupied by The National Reserve Life Insurance Company are wholly inadequate, and the needs of said company are constantly and rapidly increasing; and

"WHEREAS, there are no available, suitable and adequate quarters for the company in any office buildings in the city; and

"WHEREAS, in the judgment of the Board of Directors of said company, the company will ultimately require for its convenient accommodation in the transaction of its business, an office building of not less than ten or twelve floors, 40 x 130 ft.; and

"WHEREAS, in the opinion of the Board of Directors, the spaces in such building not at present necessary for the use of said company could. be rented at profitable rents, and in excess of the amount which can be earned by investments in bonds and mortgages,

"Now, therefore, be it resolved, that the company purchase lots and erect an office building thereon for its own use; any unoccupied spaces to be rented to other tenants until required for the accommodation of its business, the cost of such site and building not to exceed Five Hundred Thousand Dollars ($500,000); and that the President of said Company be hereby authorized and directed to proceed without delay to the purchase of a site for said building."

The defendant in his return alleges—

"That he is advised that the superintendent of insurance of the state of Kansas, upon the advice of the attorney-general of the state of Kansas, has held that the plaintiff company has no power to invest its funds in an office building unless the whole of said building is necessary for the present, or immediate, anticipated needs of the company.

.　　.　　.　　.　　.　　.　　.　　.　　.　　.

"That in order to construct said building it would be necessary to use the entire capital stock of said company and to invest a portion of the funds of the company which is necessary for a proper reserve against its outstanding risks; that it is necessary to preserve its surplus, or a considerable portion thereof, in liquid assets, for the purpose of paying death claims or other claims against the company, as they may mature; that he is advised from the same source that it is not lawful for a life insurance company to invest any portion of its reserve in real estate.

.　　.　　.　　.　　.　　.　　.　　.　　.　　.

"That if it should be determined that the company has power to invest a portion of its reserve in such real estate that it will be necessary for the plaintiff company to convey the title to said real estate to the superintendent of insurance for the purpose of depositing with the state treasurer, as is required, for the reserves of the company; and that it will be necessary for the superintendent of insurance to cause said real estate to be appraised from time to time to the end that said real estate be only carried as part of the reserve of its fair market value; that defendant is advised that no machinery is provided by statute for such deposit of the title, or for such appraisal."

The plaintiff has filed a motion for judgment notwithstanding the return, and the cause is heard on that motion.

1. Does the company have power to erect an office building larger than its immediate necessities require? We look to the

statutes first.   Section 5232 of the General Statutes of 1915 in part
reads:

"No life insurance company organized under the laws of this state shall be
permitted to purchase, hold or convey real estate, excepting for the purposes
and in the manner herein set forth, to-wit:

"First. Such as shall be requisite and convenient for its accommodation in
the transaction of its business;  . . . .

"And it shall not be lawful for any company incorporated as aforesaid to
purchase, hold or convey real estate in any other case or for any other pur-
pose; and all such real estate as may be acquired as aforesaid, and which shall
not be requisite or convenient for the accommodation of such company in the
convenient transaction of its business, shall be sold and disposed of within
five years after such company shall have acquired absolute title to the same;
and it shall not be lawful for such company to hold such real estate for a
longer period than that above mentioned, unless the said company shall pro-
cure a certificate from the superintendent of the insurance department that
the interests of the company will suffer materially by a forced sale of such
real estate, in which event the time for the sale may be extended to such time
as the superintendent of the insurance department shall direct in such certifi-
cate."

The amount of real estate that a life insurance company can
own in this state is limited by that section.   In the present case,
it does not appear that the plaintiff company owns any real
property.  What it proposes to buy is to be used for an office build-
ing.   The board of directors is the business manager of the corpora-
tion and so long as the board acts in good faith, its orders are not
reviewable in the courts.   The courts are not the business managers
of corporations and cannot become such except through the appoint-
ment of receivers to attain some specific object required by law.
It is within the power of the board of directors to construct a
building larger than the present needs of the company require.
(*State Life Ins. Co. v. Dunbar*, 133 Tenn. 331.)

2.  The principal question is:   Can the reserve fund be used
for the erection of such a building, and the title to the property
be placed in the superintendent of insurance for the purpose of
depositing it with the state treasurer as a part of that fund?   This
involves the interpretation of section 1 of chapter 211 of the Laws
of 1917, which reads:

"Any life insurance company, or any trust or loan company heretofore or
hereafter organized under any law of this state, may, by the direction and
consent of a majority of the respective board of directors, or finance com-
mittee, purchase or invest, by loan or otherwise, any of its funds in bonds or
notes secured by mortgages on any unincumbered real estate worth one hun-

dred per cent more than the sum so loaned thereon, or in the bonds of the United States, or of this state, or of any other state, or in bonds issued by any county, city, township, village or school district of this state, or of any other state, pursuant to any laws of this state or of any other state, as the case may be, or in farm loan bonds issued or used by the federal farm loan banks of the United States, or in bonds issued by any other nation, or subdivision or district therein, issued pursuant to the laws of such nation or political division thereof. And any such life insurance company may also invest its funds in loans to its policyholders to any amount not to exceed the reserve held by such company upon such policy, to be secured by the promissory note of the policyholder, and the assignment to the company of the policy upon which such loan is made, anything in the charter of any such company to the contrary notwithstanding."

The company's reserve fund must be invested as required by this law. The company is not authorized to invest that fund in any kind of property other than those named in the statute. There is no authority, nor any law, by which the company can take its reserve fund and with it erect an office building and take the title to that property in the name of the superintendent of insurance and deposit that title with the state treasurer as a part of the reserve fund of the company.

It follows that the writ of mandamus should be denied.