**BEARD v. ACHENBACH MEMORIAL HOSPITAL ASS'N et al.**

No. 3624.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1948.

---

Harry O. Glasser, of Enid, Okl. (Harry O. Janicke, of Winfield, Kan., on the brief), for appellant.

Riley W. MacGregor, of Medicine Lodge, Kan., and J. B. Patterson, of Wichita, Kan. (Paul R. Wunsch, of Kingman, Kan., A. W. Hershberger, Richard Jones, and Wm. P. Thompson, all of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and B R A T T O N and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Jacob Achenbach died leaving a will which contained a provision directing the trustees of his estate to erect and equip a public hospital in the town of Hardtner, Kansas, or on a specified tract of land adjacent to the town, at a cost to the estate of not more than $125,000. The provisions permitted the trustees to secure such persons or organizations as they might deem best to manage, control, and operate the hospital. The will was admitted to probate; and the hospital was constructed, equipped, and conveyed to Achenbach Memorial Hospital Association, a nonprofit corporation organized under the laws of Kansas for the purpose of accepting and operating it. The deed of conveyance recited that it was executed under the terms and provisions of the will and certain orders of court; and it provided that should the grantee become unable or unwilling to maintain and operate the property as a hospital, or should it commit or permit waste upon the premises, or should it not protect and preserve the property according to the true intent and purpose of the conveyance, the conveyance should terminate and the property revert to the estate of the testator. Several months prior to the opening of the hospital, the corporation entered into a contract with Doctor H. L. Galloway, then engaged in conducting a hospital at Anthony, Kansas, a town located approximately forty miles from Hardtner, which provided that Doctor Galloway should move to Hardtner and be the chief of the hospital; that he should receive as remuneration for himself and other doctors and specialists sixty-five per cent of all moneys received from members of the hospital association, except that received from membership pledges, and sixty-five per cent of all moneys charged for the treatment of non-members who were treated by Doctor Galloway and his associates; that the remaining thirty-five per cent of such moneys should be used for the upkeep and maintenance of the hospital; and that all moneys received from the use of rooms, drugs, medicines, bandages, X-ray machines, laboratory equipment, and any other equipment owned by the association should go

into the permanent or maintenance fund to be used for the maintenance of the hospital. The contract further provided that it should be in force and effect for a period of five years. The hospital was opened for the reception of patients in September, 1941. Doctor Galloway became its chief and he had two medical assistants.

In 1946, Charles C. Beard, a member of the association, on behalf of himself and other dissatisfied members, brought this class action against the corporation, certain directors, certain former directors, the three members of the medical staff of the hospital, the superintendent of the hospital, the executor of the last will of the testator, and the trustees of the estate of the testator. The cause of action pleaded in the second amended complaint was that the deed conveying the property to the corporation did not fulfill in certain particulars the intent and purposes of the provision contained in the will and subjected the corporation to certain handicaps and burdens not contemplated by the bequest; that funds of the corporation had been and were being paid to the members of the medical staff of the hospital as compensation for medical services, in violation of the contract with Doctor Galloway; that funds of the corporation had been wrongfully paid to Doctor Galloway and his associates in the form of a bonus; that the original contract with Doctor Galloway would terminate soon; and that unless prevented from doing so, the corporation and the doctor would enter into a new contract beneficial to the doctor and harmful to the corporation. The prayer was for the appointment of a receiver, for an appropriate order restraining the execution of a renewal contract, and for an accounting of the funds wrongfully paid to the members of the medical staff of the hospital. By answer, the defendants admitted certain allegations contained in the complaint, denied fraud, and pleaded that all of the dealings between the directors of the corporation and Doctor Galloway, including the payment of the bonus, had been from time to time approved by the members of the association. Judgment was entered for the defendants, and plaintiff appealed.

■■ It is urged that more funds were paid to the doctors for their professional services at the hospital than was authorized by the contract, and that such excessive payments constituted wrongful mismanagement of the affairs of the corporation for which appropriate relief should have been granted. The written contract provided the basis on which the members of the medical staff were to be compensated for their professional services, and from the beginning of the operation of the hospital the provisions of the written agreement were not followed in certain respects. The doctors received all of the doctors fees, not including fees of the clinic, for operation upon and services to hospitalized non-members of the association; and, in addition, they received a portion of the fees for their services in connection with the laboratory and X-ray equipment. But the court found that at the time the terms of the written contract were agreed upon, the division of the fees and the need later for a change was discussed; that from the opening of the hospital, Doctor Galloway and his associates refused to proceed under the original contract and on various occasions informed the directors that they would not continue to staff the hospital without the change in distribution of such fees; that the division and distribution of the fees throughout the entire period was known to the directors; that the directors discussed such division and distribution at their monthly meetings; and that the directors accepted and acquiesced in the change or departure from the original contract. In the trial of a non-jury case, it is the province of the trial court to appraise the credibility of the witnesses, to determine the weight to be given to their testimony, to draw reasonable inferences from the facts established, and to resolve conflicts in the evidence and the inferences fairly to be drawn from it. The evidence and the reasonable inference fairly to be drawn from it were sufficient to support these findings of the trial court, and they are not plainly erroneous. Therefore they are not to be overturned on appeal. Yates v. American Republics Corporation, 10 Cir., 163 F.2d 178; Wyoming Railway Co. v. Herrington, 10 Cir., 163 F.

2d 1004; Boston Insurance Co. v. Read, 10 Cir., 166 F.2d 551.

The parties did not enter into a new agreement expressly rescinding or modifying the original contract between the corporation and Doctor Galloway. But with certain exceptions having no material bearing here, the parties to a simple contract may modify its provisions, engraft new terms upon it, or rescind it altogether. The parties are ordinarily as free to modify or change a contract after making it as they were to execute it in the first instance. And in the absence of a constitutional or statutory provision otherwise, it is not necessary that the agreement to modify, alter, change, add to, or rescind be express. Mutual assent to modification, change, or rescission may be implied from the acts of the parties and the circumstances. 6 Williston on Contracts § 1826. Here, under the facts as found by the trial court, the parties discussed from time to time the question of compensating the members of the medical staff on a basis substantially different from that specified in the original contract; throughout the entire period intermediate the opening of the hospital and the institution of the suit, the doctors were paid monthly on such basis different from that fixed in the written contract; and the directors acquiesced in such payment. Manifestly, the court was warranted in concluding that the parties impliedly modified the original contract in respect to the compensation of the doctors.

The directors of a corporation are charged with the duty of managing its affairs honestly and in good faith, and they must exercise ordinary and reasonable care in the performance of their duties. They must act with fidelity to the interests of the corporation, and they are jointly and severally liable for losses of the corporation proximately resulting from bad faith, fraudulent breaches of trust, or gross or wilful negligence in the discharge of their duties. But under the law of Kansas the directors of a corporation, acting in good faith and within the limitations of the law, have the power to determine its policies and manage its affairs. Feess v. Mechanics' State Bank, 84 Kan. 828, 115 P. 563, L.R.A.1915A, 606; Inscho v. Mid-Continent Development Co., 94 Kan. 370, 146 P. 1014, Ann.Cas.1917B, 546; National Reserve Life Ins. Co. v. Moore, 114 Kan. 456, 219 P. 261. And ill-success or bad judgment not so reckless or extravagant as to amount to bad faith or gross or wilful negligence on the part of directors in the discharge of their duties do not warrant the appointment of a receiver for the corporation or the rendition of a personal judgment against the directors. Inscho v. Mid-Continent Development Co., supra. The modification by course of conduct of certain provisions in the contract relating to the compensation to be paid the members of the medical staff for their professional services and the making of monthly payments according to the modification did not constitute such reckless, extravagant, or wrongful conduct on the part of the directors as to warrant the appointment of a receiver for the corporation or the rendition of personal judgment against the directors.

Turning to the payment of the bonus, the directors of the corporation, at their meeting held in October, 1945, adopted a resolution authorizing payment of a bonus of $1500 each to the three doctors. The resolution recited that such payment was for the efficient services which the doctors had rendered during the previous four years. The court found that the directors and the doctors agreed that should the remuneration of the doctors for their services prove inadequate during the early operation of the hospital, a bonus would be paid later if the hospital became a financial success; that the doctors were inadequately compensated during the early operation of the hospital; that the hospital proved a financial success later; that the directors authorized payment of the bonus as such additional compensation; and that it was reasonable in amount for the services rendered. Again, these findings are adequately supported by the evidence and the inferences fairly to be drawn from it, and they are not plainly erroneous. Therefore they must stand on appeal. Yates v. American Republics Corporation, supra; Wyoming Railway Co. v. Herrington, supra; Boston Insurance Co. v. Read, supra.

The payment of incentive compensation in the form of a bonus to employees who render continuous and efficient services is a common practice of long standing among large employers. While incentive compensation of that kind must bear some reasonable relation to the value of the services rendered, ordinarily a bonus which bears a reasonable relation to the value of the services rendered, which is deemed to further the best interests of the corporation, and which is paid in good faith is not a mere gift, gratuity, or reckless expenditure of which stockholders or shareholders may complain in an action of this kind. Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593, 40 A. L.R. 1412. It cannot be said that under the facts and circumstances as found by the court, the payment of the bonus to the doctors constituted such reckless or extravagant expenditure of funds as to warrant the appointment of a receiver for the corporation or the rendition of a personal judgment against the directors authorizing the payment.

The judgment is affirmed.