**William M. KOMANETSKY, M.D., et al., Plaintiffs-Appellants,**

v.

**MISSOURI STATE MEDICAL ASSOCIATION et al., and Health Care Foundation of Missouri, Defendants-Respondents.**

No. 35250.

Missouri Court of Appeals, St. Louis District, Division One. Oct. 29, 1974.

Motion for Rehearing or Transfer Denied Dec. 6, 1974.

Application to Transfer Denied Jan. 13, 1975.

Francis P. Dorsey, James J. Raymond, St. Louis, for plaintiffs-appellants.

Bradley, Noble & Baker, John W. Noble, Charles H. Baker, Kennett, Forrest P. Carson, Jefferson City, for defendants-respondents.

KELLY, Judge.

The issue in this case, simply stated, is whether an association of physicians and surgeons of the school of allopathy incorporated under CH. 352 RSMo.1969, V.A. M.S., may join with an association of physicians and surgeons of the school of osteopathy incorporated as a not-for-profit corporation under CH. 355 RSMo.1969, and incorporate a third corporation under

CH. 355 RSMo.1969 for the purpose of affording a review of quality and costs of services rendered by members of the third corporation who are also members of either of the aforesaid parent corporations. We hold that they may.

For the purpose of brevity the following abbreviations of the corporate names of the associations who are parties to this litigation shall hereinafter be used: Missouri State Medical Association—MSMA; Missouri Association of Osteopathic Physicians and Surgeons—MAOPS; and Health Care Foundation of Missouri—HCF.

This suit was commenced by ten medical doctors, all members of MSMA, against the defendant corporations, MSMA and HCF, and 19 individual medical doctors, who the petitioners allege, were officers or Council members of MSMA on August 31, 1970, or September 29, 1971, when the petition was filed. Petitioner's pleading was in two counts. Count I alleged that the petitioners were members of MSMA and that they were bringing this cause of action in behalf of themselves and all members who might wish to join them. The gist of their pleading was that Joseph L. Fisher, M.D., the President of MSMA, with the approval of the officers and Council of MSMA, together with Claus Rowheder, D.O., the President of MAOPS, incorporated HCF under the provisions of CH. 355 RSMo.1969 as a not-for-profit corporation; that neither the petitioners nor any other members of MSMA were afforded an opportunity to vote their approval or disapproval of this action by the officers and Council of MSMA; that neither the Constitution and By-Laws of MSMA nor the statutes under which it was incorporated gave MSMA, its officers or Council, authority to join with a second association to form a third; that this action of the defendants would cause the petitioners irreparable injury in that (1) a provision in the by-laws of HCF making any member in good standing of MSMA automatically a member of HCF subjected the petitioners to "involuntary servitude" by making them members of HCF without their consent or prior approval; (2) that HCF would require them to violate the physician's oath by compulsory inspection of their medical records in violation of the doctor-patient privilege; (3) that HCF would require review of professional acts and conduct of the petitioners by a board on which members of the lay staff of HCF unqualified to judge, would make findings with respect to professional acts and conduct; and (4) that the individual defendants appropriated $5,000.00 of MSMA's monies to HCF in excess of their authority as officers and Council members of MSMA. Petitioners requested that the court enjoin MSMA and the individual defendants in their capacity as officers and Council members of MSMA from further activity in the affairs of HCF and that the individual defendants be ordered to make restitution for the money they misappropriated to HCF. Count II was directed against HCF and sought an order restraining HCF from using any additional funds appropriated by the defendants and return to MSMA any property or funds already given it by the defendants. The individual defendants and MSMA jointly filed their Answer denying most of petitioner's allegations, setting forth the names and offices of the officers and Councilors of MSMA for the years 1970, 1971 and 1972; and further alleging that prior to the filing of the petition in this case the by-laws of HCF had been amended making membership in HCF voluntary for any member in good standing of MSMA and MAOPS, and that the incorporation of HCF was done by and with the authority of the officers, Council, Constitution and by-laws of MSMA.

After trial, the trial court having taken the cause under submission upon completion of the evidence, found, with respect to Count I, that the petitioners were not entitled to the relief sought, denied the injunction as prayed for, and further denied restitution of funds or property from the individual defendants. On Count II judg-

ment was entered in behalf of HCF. A timely appeal was taken from this judgment after petitioners' motion to set aside judgment and enter judgment for petitioners as prayed in their amended petition, or, in the alternative, for a new trial, had been filed, presented without oral argument and denied by the trial court.

■ On appeal the petitioner's did not brief any alleged trial error with respect to the trial court's judgment on Count II of the petition and we therefore conclude that the appeal from the judgment entered thereon is abandoned. State ex rel. Beeler v. City of Raytown, 453 S.W.2d 672, 674[2] (Mo.App.1970). As to Count I though, they raise the following Points: (1) the statutes under which MSMA was incorporated do not give the authority to join with another association to form a third association; (2) the decision whether MSMA should join with MAOPS to form HCF was not ordinary business and should have been resolved by a vote of the membership, and (3) the individual defendants who were officers and members of the council at the time the funds were misappropriated should make restitution to MSMA.

MSMA was incorporated under CH. 352 RSMo.1969 and received its charter from the circuit court of the City of St. Louis on July 28, 1904. Its charter was thereafter amended by court order of December 3, 1951, and it is this Amended Charter which was in effect at all times relevant to the issues presented in this appeal. According to the Constitution of MSMA the House of Delegates is the legislative body of the Association and consists of delegates elected by the component societies as well as all Past-Presidents of the Association who serve as Delegates-at-Large. It meets annually at the time and place of the Annual Session and is required by the By-Laws of the Association to remain in continuous session on the first day of the Annual Session and complete the work coming before it at that session. It must further meet on the last day of the Annual Session to receive the report of the Nominating Committee and complete unfinished business and the election of officers. Its membership is representative, and each component county society is entitled to send one delegate each year or one alternate to the House of Delegates for each fifty full paid members or fraction thereof in the Association plus one additional delegate or alternate for each one hundred members or fraction thereof. However, each component society which is composed of two or more county societies is entitled to at least one delegate from each of the counties of which it is composed. All meetings of the House of Delegates are required to be open to members of the Association. It is required by the By-Laws to divide the state into Councilor Districts specifying what counties each district shall include, and pursuant to the Constitution and this authority, the House of Delegates has divided the state into ten Councilor districts. The Council, which is the executive body of the House of Delegates and between sessions exercises the power conferred on the House of Delegates by the Constitution and By-Laws, also constitutes the judicial body of the Association when matters are referred to it for decision by the Association, by component societies or by individual members thereof. It consists of the President, President-Elect, Immediate Past-President, Secretary, Treasurer and one duly elected Councilor from each Councilor District. Half of the membership of the Council is elected each year for a term of office of two years by the delegates from Councilor Districts whose Councilors' terms expire, so that the terms of half of the 10 elected Councilors terminate annually. The Council is required by the By-Laws to meet during the Annual Session at such times as necessity may require, subject to the call of the Chairman or on petition of three Councilors. It elects a Chairman and a Vice-Chairman for one year terms and is required to make an annual report to the House of Delegates. Each Councilor is charged with express duties

within his Councilor district and the Council has specific duties imposed upon it by the By-Laws, among which are (1) that it be the appellate Board of Censors of the Association, (2) that charters shall be issued to county societies only on approval of the Council, (3) that in sparsely settled sections it has the authority to organize the physicians of two or more counties into societies preliminary to the granting of a charter; (4) to provide for and supervise the issuance of all publications of the Association and appoint an Editor and such assistants as it deems necessary, (5) to prescribe the methods of accounting and establish a Committee on Auditing and Appropriations from among its membership for the purpose of auditing all the accounts of the Association, (6) with adopting an annual budget providing for the necessary expenses of the Association for the following year, (7) to fill vacancies in office not otherwise provided for which occur between Annual Sessions of the House of Delegates, (8) to fix the salaries of all employees of the Association, (9) to provide headquarters for the Association, and (10) to elect an Executive Secretary and Assistant Executive Secretary and such other personnel as may be necessary and who shall perform such duties as the Council may designate and receive such salary and serve for such periods and under such conditions as the Council may determine.

The officers of the Association—except for the Councilors—are elected annually. A Committee on Nominations, appointed by the President on the first day of the Annual Session, presents to the House of Delegates a "ticket" containing the name of one member for each of the following constitutionally enumerated offices, to-wit: three Vice-Presidents, Secretary, Treasurer, Speaker and Vice-Speaker of the House of Delegates. The President-Elect is nominated from the floor of the House of Delegates, and additional nominations · for the other offices may likewise be made from the floor.

Provision is made in the Constitution—Article IX—for a referendum at any General Meeting of the Association by a two-thirds vote, upon any question pending before the House of Delegates and the House of Delegates may, by a vote of its members, submit any question to the membership of the Association for its vote, whereupon, a majority vote of all members of the Association determines the question. In addition to the Annual Meeting of the Association, special meetings of the Association or of the House of Delegates may be called by a two-thirds vote of the Council and shall be called upon a petition signed by members equal in number to one third of the total number of delegates certified for the last Annual Session.

There are eleven standing committees and commissions or special committees which may be appointed by the President or the Council.

Minutes of the meetings of the House of Delegates are taken down by a steno-typist and published in "Missouri Medicine" the official publication of MSMA: minutes of meetings of the Council are taken in shorthand, mimeographed, approved and published.

The purposes of the corporation, according to the Amended Articles of Agreement, Article II, are: "[T]he promotion of the science and art of medicine, the protection of public health, the betterment of the medical profession, and, by uniting with similar organizations in other states and territories of the United States to form the American Medical Association."

HCF was incorporated by the Presidents of MSMA and MAOPS on August 31, 1970, under authority of the General Not for Profit Corporation Laws of the State of Missouri, CH. 355 RSMo.1969. Its purpose, according to its Articles of Incorporation, was to promote, develop, define and encourage the distribution of medical services and care by its members to the general public, at a cost reasonable to both patient

and physician; to preserve to both the patient and the physician freedom of choice to guard and preserve the physician and patient relationship; to protect public health; to work and study in cooperation with prepaid insurance plans to provide for budgeting for medical care and health services; to provide information and assistance to named agencies, the public, and others as to the fair and reasonable cost of adequate medical care; to work with other associations to promote the development and promotion of the art and science of medical care and health services, the protection of the public health and the betterment of the medical profession; to foster, encourage and coordinate the establishment of uniform, acceptably high standards of medical care and health services by its members with fair and reasonable remuneration for the provision of such medical care and health services; and other stated purposes consistent with the aforesaid. The Articles also gave the corporation authority to act alone or in conjunction with any person, firm, association or corporations for the purpose of attaining or furthering any of its objects or purposes provided that same are not inconsistent with the laws of the State of Missouri.

Among the functions HCF was to perform was the review of cases as to quality and cost of medical care upon submission of an inquiry or complaint by patients, physicians and intermediaries. "Intermediaries" was defined to include those who pay the bills, i. e., the federal or state governments, insurance carriers, labor unions, welfare organizations, etc. Peer review, another function of the corporation, was performed by panels consisting of 5 allopathic physicians and 2 doctors of osteopathy; said panels to consist of representatives of members who practice in both rural and urban areas of the state. Since its formation HCF has conducted investigations in some 200 cases involving 300 patient situations. HCF is governed by a Board of Directors consisting of six officers who are members of MAOPS and fif-

teen officers and Councilors of MSMA. It has an executive vice-president, a non-professional—who manages the office and executes the policies and directions of the Board. The only other employees are a full time and a part time secretary. Originally the By-Laws of HCF made membership in HCF automatic with membership and good standing in either MSMA or MAOPS; however, on September 29, 1971, HCF's By-Laws were amended removing this provision and making participation in HCF voluntary and upon application.

After incorporation of HCF the officers of MSMA at the direction of the Council, appropriated $5,000.00 for HCF. Additional contributions to the corporation were made by MAOPS in the amount of $2,000.-00, by Blue Shield of Kansas City in the amount of $15,000.00 and St. Louis Blue Shield in the amount of $25,000.00.

At the April, 1971, annual meeting of the House of Delegates of MSMA, petitioners submitted resolutions seeking a referendum on the action of the defendants with respect to HCF but these motions were rejected by the House of Delegates. Subsequently, the petitioners advised the defendants by letter that they intended to seek a judicial review of their actions if these activities with HCF were not brought to an end. When this notice went unheeded this litigation was initiated.

Each of the petitioners who testified at trial agreed that their allegation that they were the victims of "involuntary servitude" went out of the case with the amendment of HCF's By-Laws making membership therein by members of MSMA voluntary rather than automatic, and this contention has not been briefed in this Court. We do not, therefore, consider that allegation of petitioners.

Petitioners, with respect to their first Point, argue that there is no power to join with a second corporation to form a third corporation expressly authorized under CH. 352. In further support of this argument they cite Ferbrache v. Grand Lodge,

A.O.U.W., 81 Mo.App. 268, 270 (1899) for the proposition that incorporated associations or societies of the class to which fraternal or benevolent associations belong are creatures of statute, incapable of exercising any power which is not therein either expressly or clearly implied. They also call attention to the powers conferred in § 352.140 RSMo 1969 for the merger or consolidation of one or more corporations organized under this act, and argue from this delegation of powers by express legislative authority the conclusion must follow that in the absence of a specific grant of power to join with another corporation, no such power exists. Defendants state that they have no quarrel with the authorities cited by the petitioners. It is their interpretation of these authorities with which they take issue.

This is a case of first impression in this state and neither petitioners nor defendants have cited any authority directly in point. Each relies on general principles although all agree there is no specific statutory authority for what defendants did here. The critical issue upon which we conclude the case must be decided is whether defendants had the implied power to join with MAOPS and form HCF. In deciding this question we believe that we must first examine the purpose of CH. 352 under which MSMA was incorporated, then consider the purposes for which MSMA was incorporated, and ultimately consider whether formation of HCF in conjunction with MAOPS was within its implied powers.

■ The thrust of the Chapter is the purpose for which the associations authorized to enjoy the benefits of corporate status devote themselves. The single thread which runs through the entire chapter is "benevolence," i. e., "the disposition to do good," whether it be religious, scientific, fraternal or educational. For this reason, the statute, § 352.010 requires that "the purpose and scope of the association be clearly and fully set forth" so that anyone examining the Articles of Agreement

can determine the avowed reason for its incorporation. The "do-good" nature of the associations which may incorporate under the Chapter are more fully detailed in § 352.020 to include "any purely charitable society, hospital, asylum house of refuge, reformatory and eleemosynary institution, fraternal-beneficial associations, or any association whose object is to promote temperance or other virtue conducive to the well-being of the community and, generally, any association formed to provide for some good in the order of benevolence, that is useful to the public, . . . ; any association, congregation, society or church organization formed for religious purposes, and any association formed to provide or maintain a cemetery; any school, college, institute, academy or other association founded for educational or scientific purposes, including therein *any association formed to promote* literature, history, *science, information or skill among the learned professions,* intellectual culture in any branch or department, or the establishing of a museum, library, art gallery, or the erection of a public monument, *and, in general, any association, society, company or organization which tends to the public advantage in relation to any or several of the objects above enumerated, and whatever is incident to such objects, . . . ."* (Emphasis supplied). We hold that in addition to those powers specifically enumerated in the Chapter, corporations organized under this Chapter have those implied powers which will aid them in achieving the purposes for which they were organized unless said powers are expressly forbidden to them by other statutory enactments, of either the United States or the State of Missouri, and the Constitutions thereof.

In his book "NON-PROFIT CORPORATIONS, ORGANIZATIONS AND ASSOCIATIONS" (2d ed. 1965), Professor Howard L. Oleck, makes no distinction between the powers of a not-for-profit corporation and a corporation incorporated

for the purpose of realizing a profit. He says, § 47, l.c. 113:

"Formerly, corporations were viewed as possessing only such powers as were specifically granted to them by the state. This grant of powers was found in the certificate of incorporation . . . or in the special statute granting a charter to the corporation . . . Today, in all the states, a corporation is deemed to possess all the powers of a natural person except those powers which are specifically forbidden to corporations by the law. The old concept of a corporation as a bundle of only a few, specifically granted powers, has been replaced by the concept of a corporation as an artificial person, lacking only those powers which the law specifically denies to it."

And, in § 48, l.c. 116, he continues:

"In the modern view, a corporation possesses all those powers reasonably necessary for the accomplishment of its proper purposes.

What these proper purposes are is stated in the charter of the corporation . . . When the state accepts the corporate charter for filing, it thereby approves the purposes stated in that charter.

*Therefore, the corporation has all those powers reasonably necessary for the accomplishment of its stated purposes, except insofar as specific rules of law, or specific statutes, limit such implied powers."* (Emphasis supplied.)

The leading case in this state on the implied powers of a corporation incorporated under this law is State ex inf. Harvey v. Missouri Athletic Club, et al, 261 Mo. 576, 170 S.W. 904 (banc, 1914). In *Harvey* the powers of a corporation formed under Article 10 of Chapter 33 RSMo.1909—the predecessor of Ch. 352 V.A.M.S.—were construed. The Supreme Court, en banc, 170 S.W., l.c. 909, said:

"They [implied powers] are defined to be those possessed by a corporation, not indispensably necessary to carry into effect others expressly granted, and [they] comprise all that are *appropriate, convenient, and suitable* for that purpose, including as an incidental right a reasonable choice of the means to be employed in putting into practical effect this class of powers." (Emphasis supplied.)

The Court then concluded that since social clubs, such as the Missouri Athletic Club were organized under Article 10 of Chapter 33, and there was no declaration of the express powers of said corporations, the court must then look to judicial interpretation and resort must be had "to that general knowledge necessarily possessed by the courts in common with individuals as to the nature and purpose of associations of this character, to enable the full extent of their powers to be determined." id. 910. Guided by these principles and the purposes of the Club as set out in its articles of incorporation, the court said, l.c. 910: " . . . it may reasonably be concluded that they are clothed with power to do whatever may be necessary, not only to their existence, but to promote the prosperity of organizations of this character and the pleasure and improvement of the membership, not contrary to public policy or in violation of the law."

Bearing in mind the purposes of MSMA enunciated in Article II of its Constitution we decide that the corporation possessed those powers necessary or proper for the accomplishment and furtherance of those purposes which had been approved by the court in approving the Amended Charter of the association. In view of the broad purposes of MSMA and the powers necessary to achieve its aims and in light of the similar medical and scientific purposes for which HCF was incorporated, we hold that the defendants were acting within the implied powers of MSMA in joining with MAOPS in the incorporation of HCF for the purpose of "the promotion of the science and art of medicine, the protection of public health, the betterment of the medical profession" by reviewing the quali-

ty and cost of medical care within the state of Missouri and affording peer review of the professional practices of those members of MSMA and MAOPS who voluntarily made application for membership in HCF.

Petitioners second Point, that the decision to join with HCF was one which was not ordinary business and should have been put to a vote of the membership, is likewise without merit.

Petitioners argue that unlike the statutory authority granted to a board of directors for the control and management of the property and business of a corporation organized under Ch. 351 V.A.M.S., The General Business Corporation Law of Missouri, there is no comparable body authorized to conduct the business of a Ch. 352 corporation; that, by statute, the rights, duties, authority and power of these latter corporations must be found in their by-laws, § 352.110, and that nowhere in the articles of agreement or the by-laws of MSMA is there authority given to the officers, the Councilors or the House of Delegates to go outside the corporate structure and join with another corporate body to form a third corporate entity. Defendants respond to this argument saying that the constitution and by-laws of the corporation establish the House of Delegates as the representatives of the membership, having been elected thereby for that purpose, and that the House of Delegates was authorized to act as defendants did, by an amendment to a resolutions committee's report of April 3, 1970, directing the Council to "implement the *proposed* peer review procedure with expediency." (Emphasis supplied). The petitioners further contend that the change effected was a fundamental change in MSMA which would require a vote of the membership to be valid. Defendants counter by denying that a fundamental change in the corporation or its purposes was involved.

■ We have already held that the defendants' acts were not ultra vires the purposes of the corporation or specifically prohibited by statute. We further hold that they are not contrary to public policy. We proceed to consider whether they are ultra vires the authority conferred on the officers, Councilors and House of Delegates.

■ With respect to the report of the resolutions committee, our study of that report and supporting documents causes us to conclude that the peer review referred to there was concerned with the Missouri Medicare Program and not with peer review of all types of medical care and services included in the HCF program, and that report did not authorize the peer review program subsequently approved by officers and Councilors in the formation of HCF.

Nevertheless, subsequent to the actions of the defendants here under attack, the record is clear that the House of Delegates fully ratified that action. The question then becomes what is the effect of ratification by the House of Delegates?

■ It is fundamental that ratification by stockholders will not validate ultra vires acts exceeding the express or implied powers of a corporation where estoppel is not applicable or as to those acts which are contrary to public policy or statutorily barred. However, an act merely in excess of the authority conferred on the directors or officers of a corporation may be subsequently ratified by the stockholders. Fletcher, Cyclopedia Corporations, Vol. 7, § 3401, states:

"An act [of the directors] may be within the powers of a corporation and not within the powers of the directors, for the powers of the latter are derived, not from the legislature, like the powers of the corporation, but from the stockholders in their corporate capacity. A result of this distinction is that the stockholders of a corporation, while they cannot by ratification render valid an act which is beyond the powers of the corporation, may ratify an act which is

within its powers, but beyond the powers of the directors."

And in Triplett v. Grundy Electric Cooperative, Inc., 389 S.W.2d 401, 407 [9] (Mo.App.1965) the court said:

"It is the general rule that any act of the board of directors beyond the scope of their authority . . . may be ratified by the stockholders when the stockholders could have originally authorized such act, . . . Ratification of the act under such circumstances is considered tantamount to original authority and is as binding as if prior authority had been given."

In Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593 (banc 1925) the Supreme Court held that in the absence of fraud or other illegal acts by the directors or majority stockholders that the action of the directors in approving excessive bonuses to themselves was voidable at most and could be ratified by the majority stockholders and said ratification would bind the dissenting minority stockholders.

 The evidence in this case is that the resolutions passed at the April '71 Annual Session, and the April '72 Annual Session, the publication of the Council minutes of October 3–4, 1970, reflecting the approval of a $5,000.00 appropriation for HCF, and the subsequent approval of those minutes by the House of Delegates lends support to a finding that the House of Delegates was in possession of full knowledge of all material facts when it approved the action of the defendants with respect to the formation of HCF, and it is that body which is charged with the conduct of the business of the corporation when it is in session.

We hold therefore, that the acts of the defendants were ratified by the duly elected representatives of the membership, and, if ultra vires, were thus validated.

 We next consider whether the authorization of the incorporation of HCF

was an "extraordinary matter" on which the entire membership was entitled to vote. "Extraordinary matters," which would require a vote of the membership, include (1) a radical change of fundamental policy or purposes, (2) dissolution and (3) merger. H. Oleck, Non-Profit Corporations, Organizations and Associations, 313 (2d ed. 1965). This statement is consistent with the statutes of this state, §§ 352.140 and 352.180. We are not here confronted with an attempt at merger, consolidation or dissolution. Peer review has been employed in the practice of medicine in one form or another for many years in the interest of the profession and for the protection of the public; nor was it foreign to MSMA prior to the incorporation of HCF. From our point of vantage, the formation of HCF is an effort on the part of two associations whose membership consists of physicians and surgeons from different schools of medicine, viz, allopathy and osteopathy, to continue to maintain separate but parallel professional associations, and simultaneously afford a public service through a voluntary association via a third corporation "[t]o foster, encourage and coordinate the establishment of uniform, acceptably high standards of medical care and health services by the members with fair and reasonable remuneration for the provision of such medical care and health services." This goal is, we think, not inimical with the action of the General Assembly of this state in 1959 whereby it repealed CH. 337 V.A.M.S. by Laws 1959, S.B. No. 50 sec. A relating to the practice of osteopathy and enacted in lieu thereof a number of statutes whose purpose was to establish a common set of laws applicable to both schools of medicine. The definition of physicians and surgeons now includes practicioners of both schools of medicine. Qualifications of candidates for licenses in either allopathy or osteopathy are the same, the examination of applicants for certificates of licensure as physicians and surgeons cover the same subjects and the State Board of Registration for the Healing Arts which was created for the pur-

pose of registering, licensing and supervising all physicians and surgeons in the state, consists of four members, at least one of whom shall be a graduate of a professional school approved and accredited as reputable by the American Medical Association and at least one of whom shall be a graduate of a professional school approved and accredited as reputable by the American Osteopathic Association. We also conclude that this action is not in conflict with the purposes of MSMA, nor does it constitute, as petitioners contend, an "extraordinary matter" which is a radical change of fundamental policy.

On two prior occasions the Council of MSMA has formulated other not-for-profit corporations, the Missouri State Medical Foundation in 1961 and the Missouri Medical Service in 1944–45. Although the Council did not join with another association to form these not-for-profit corporations, on both occasions the House of Delegates approved the action of the Council without a vote of the general membership. There was testimony by Dr. Jost, one of the petitioners, that he could not remember the general membership voting on anything since 1937. Furthermore, the petitioners at the April '71 Annual Meeting of the House of Delegates presented a number of resolutions seeking a referendum of the action of the defendants in establishing HCF which were referred to committee and when called to the floor were defeated by adoption of the committee reports recommending rejection of said resolutions.

We therefore rule Point 3 against petitioners.

 With respect to the question of restitution raised in Point 3 our disposition of petitioners' other Points also disposes of the restitution issue. There is in this case no evidence of self-dealing or bad faith on the part of the defendants, nor is there any evidence that any one of them has financially benefitted by the appropriation of the funds to HCF out of the treasury of

MSMA. We rule this Point against the petitioners also.

We find that the judgment of the Chancellor is not clearly erroneous and affirm.

SIMEONE and WEIER, JJ., concur.