CROW, J., recuses.

PILGRIM EVANGELICAL LUTHERAN CHURCH OF the UNALTERED AUGSBURG CONFESSION OF ST. LOUIS, MISSOURI, A Missouri Corporation, Plaintiff-Appellant,

v.

The LUTHERAN CHURCH–MISSOURI SYNOD FOUNDATION, a Missouri Corporation, et al., Defendants-Respondents.

No. 45963.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 1983.

Application to Transfer Denied Jan. 17, 1984.

J. Peter Schmitz, St. Louis, for plaintiff-appellant.

Stolar, Heitzmann, Eder, Seigel & Harris by Jay L. Levitch, St. Louis, for The Lutheran Church-Missouri Synod Foundation and The Lutheran Church-Missouri Synod.

ARTHUR LITZ, Special Judge.

Plaintiff-appellant Pilgrim seeks to reverse the trial court's judgment dismissing its claims against defendants-respondents in a court tried case. The crux of the controversy is an attempt by appellant, the settlor of a trust, to gain control over an endowment fund and two bequests under a charitable trust. The trial court denied appellant's attempts to revoke the trust agreement and we affirm.

Appellant was incorporated in 1914 as a pro forma corporation. Respondent The Lutheran Church-Missouri Synod ("Synod") is a national Lutheran church body consisting of various congregations, district organizations, educational institutions and affiliated agencies. Appellant has been a member congregation of respondent Synod since 1915. Respondent The Lutheran Church-Missouri Synod Foundation ("Foundation") is a corporation created to provide, *inter alia,* trust management services for respondent Synod, its constituent members and agencies, and donors to those organizations and agencies.

Appellant's constitution stated that "The purpose and object of this corporation shall be to hold the title and manage such real estate as may be acquired for the use of a church edifice and parsonage for said congregation." The constitution also provided for a board of directors to manage the business affairs of the corporation, subject to the direction and control of the congregation. The by-laws provided that the corporation shall decide all matters relating to appellant's affairs and government. Unchallenged testimony established that the voting member of the corporation, the voter's assembly, controlled appellant's affairs.

The endowment fund in question was established pursuant to a vote of appellant's membership in 1921. On a few occasions from 1921 until 1944, monies from the endowment fund were loaned to the congregation in exchange for interest-bearing notes that were included in the endowment fund's investment portfolio.

In 1944, the membership amended its by-laws to formalize the operation of the endowment fund under the management, custody and control of a special committee. The membership also approved rules providing that the committee could not encroach upon the principal of the fund, but could lend principal to the church for maintenance of church real property or could use income for maintenance purposes. The congregation never used the fund for maintenance purposes, however.

At various times between 1965 and 1970, the board rejected proposals to use the fund to meet deficits and general expenses. In 1969, the board of directors approved a transfer of funds from two estates, the Dingerson and De Lore estates, out of appellant's general fund into the endowment fund. The membership approved the transfer expanding the endowment fund even though appellant had a deficit of approximately $8,300. Appellant used other accounts to reduce the deficit, leaving the endowment fund intact, containing $110,000.

Appellant's membership adopted a resolution in November, 1970, suggesting that the endowment fund be placed into a "permanent trust." The resolution suggested that where possible, use of the income from the proposed trust fund would be expanded, but that the corpus must be held intact and only income generated by the corpus would be made available.

The membership named a committee to develop a formal plan to establish the trust fund. The evidence showed that the committee members viewed the endowment fund as a permanent fund, the corpus of which had always been held intact. The committee agreed that appellant should have use of income generated by the fund for a more expanded range of "maintenance" expenses, although the fund would retain a character consistent with the original donor's intentions. The committee selected respondent Foundation as their choice for the fund's trustee. A member of the committee contacted an attorney for respondent Foundation, furnished him with background information and explained appellant's objectives in seeking to place the endowment fund in a trust. The attorney prepared a draft trust agreement and proposed amendment to appellant's by-laws, authorizing adoption of the trust agreement.

At a special meeting on December 1, 1970, appellant's membership discussed the trust agreement and debated the terms of the provisions. One week later, on December 8, 1970, the membership again were read the proposed trust agreement and by-law amendment. The evidence established that during the extensive debate, all concerned had an opportunity for thorough consideration of the terms and provisions of the proposed trust agreement and by-law amendment. The members adopted the by-law amendment.

Respondent's attorney then explained the provisions of the trust agreement in detail. He pointed out that the restrictions on trust fund's income would be the same as the restrictions on the endowment fund's income. The attorney explained that the

principal would not be encroached upon, that the trust was a permanent, irrevocable fund, that if certain events occurred the fund would terminate, and that the fund would be distributed in a prescribed fashion upon termination. In addition, appellant's pastor made the membership aware of the "unalterable and irrevocable" nature of the trust agreement. Following the discussion and debate, appellant's voters assembly voted to adopt the trust agreement.

The trust agreement provided for transfer of the endowment fund into a trust administered by respondent Foundation so that respondent, as trustee would distribute all income twice a year for appellant to reimburse itself for certain specified categories of "maintenance" expenses. To receive such income, appellant had to present certification to respondent Foundation of those reimbursable expenses. Respondent Foundation was to hold the principal, which would not be made available for appellant's current purposes. In addition, the trust agreement provided that if appellant disbanded, dissolved, or moved to another locality, respondent Foundation was to continue to hold the principal of the trust and pay over the income to respondent Synod and respondent Lutheran Altenheim. Finally, the trust agreement specifically stated that it was irrevocable.

The endowment fund's assets, including the bequests from the De Lore and Dingerson estates, were transferred to respondent Foundation to be held in the trust created pursuant to the trust agreement. Appellant thereafter regularly compiled vouchers and certificates of reimbursable expenses and presented them twice a year to respondent Foundation, who turned over the income from the trust. Since the trust's inception, respondent Foundation has continued to administer, manage and invest the trust, at a nominal fee, due to appellant's membership in respondent Synod.

Almost ten years after appellant's members adopted the trust agreement, on August 6, 1980, appellant filed the present action seeking to revoke the trust agreement.

The trial court's judgment dismissing appellant's claim must be affirmed unless it erroneously declares or applies the law, is unsupported by substantial evidence, or is against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo banc 1976).

Appellant first claims that it can revoke the trust agreement because it is both the settlor and sole valid beneficiary. It is beyond dispute that the trust, adopted by the voters assembly after full debate and consideration, stated that it was irrevocable. As a completely executed voluntary trust, therefore, it is irrevocable, unless the power of revocation is reserved. *Frank v. Heimann,* 302 Mo. 334, 258 S.W. 1000, 1003 (banc 1924); *IV A. Scott, The Law of Trusts* §§ 367, 367.1 (3d ed. 1967) [hereinafter referred to as *Scott on Trusts*]; *Restatement (Second) of Trusts,* § 367 (1959).

Appellant argues, however that since it, as settlor, is the sole beneficiary of the trust, it can revoke the trust notwithstanding the provision making it irrevocable. Although this rule applies to private intervivos trusts where all beneficiaries are ascertained, are under no legal incapacity, and consent to the revocation, a different rule applies to charitable trusts. A gift in trust to a named trustee for religious purposes creates a valid charitable trust. *See McMenomy v. Williford,* 526 S.W.2d 880, 883 (Mo.App.1975); *Scott on Trusts,* § 371. The trust here, with income to be used for church "maintenance" is a charitable trust. *Restatement (Second) of Trusts,* § 371 Comment (a). In a charitable trust the beneficiaries cannot be definitely ascertained. *Yeager v. Johns,* 484 S.W.2d 211, 213 (Mo.1972). It is therefore impossible to obtain the consent of all of the beneficiaries to revoke the trust. Although the Attorney General may be empowered to consent to revocation on behalf of the public interest, appellant never asked for the Attorney General's consent, and such consent has not been given. Further, the contingent beneficiaries, respondent Synod and Lutheran Altenheim, failed to consent to revocation.

Moreover, a majority of appellant's members voted to transfer the assets of the endowment fund to the trust. A majority of church members may authorize church activity, and direct or control disposition of church property at a meeting duly called for consideration of that particular proposal. *Sosna v. Fishman,* 154 S.W.2d 398, 401 (Mo.App.1941); *Nelson v. Monitor Congregational Church,* 74 Or. 162, 145 P. 37 (1917). *See Fast v. Smyth,* 527 S.W.2d 673, 678 (Mo.App.1975).

The transfer of the endowment fund to the trust was not an ultra vires act of the corporation, as appellant contends. As the court in *Sosna* noted, the majority could authorize the sale of the religious society's real estate, even though it would inevitably result in the cessation of the holding of religious services. 154 S.W.2d at 401. Moreover, a charitable corporation has, in addition to its express powers, such implied powers as are necessary to carry out those expressly granted and which aid in achieving the purposes for which it is organized. *Komanetsky v. Missouri State Medical Association,* 516 S.W.2d 545, 552 (Mo.App.1974). Implied powers comprise all powers that are appropriate, convenient, and suitable for that purpose, including reasonable choice of means to be employed in putting into practical effect such class of powers. *Mutual Bank & Trust Co. v. Shaffner,* 248 S.W.2d 585, 589 (Mo.1952).

There is no distinction between the powers of a not-for-profit corporation and a corporation incorporated for the purpose of realizing a profit. *Komanetsky,* 516 S.W.2d at 552–53. The court in *Komanetsky* recognized that a charitable corporation, like any other corporation, possesses all the powers of a natural person[1] except

---

1. There is no doubt that a natural person would have had the capacity and power to place his own assets in an irrevocable trust similar to the trust at issue. Profit making corporations regularly transfer or donate corporate funds and assets to their charitable foundations and subsidiaries. It logically follows that appellant possessed the same power and capacity to

for those powers which are specifically forbidden to the corporation by law, and that such powers include all that are appropriate, convenient, and suitable to carry out the purposes of the corporation.

■ Moreover, charitable corporations enjoy a reasonable discretion regarding the choice of specific mechanisms to effectuate their implied powers. *Komanetsky,* 516 S.W.2d at 553. Appellant therefore had a right of reasonable choice of means to provide for the maintenance of the church and while appellant's discretionary use of means is subject to examination by a court of equity, and an abuse of that discretion may be restrained, courts will not interfere with a fair and reasonable exercise of discretion unless there is such a substantial departure from the dominant purpose of the charity as to amount to a perversion. *Ranken-Jordan Home v. Drury College,* 449 S.W.2d 161, 166 (Mo.1970). We cannot say that the membership's actions, including their choice of respondents Synod and Lutheran Altenheim as contingent beneficiaries, departed from the dominant purpose of the charity. Appellant was a member of respondent Synod when the trust was established and the organizations had close ties.

■ Appellant next contends that the transfer to the trust account was a breach of trust since the granting of any interest in the endowment fund to unrelated organizations prevented full use of the endowment fund for the purpose of appellate church. Therefore, appellant argues, the trust agreement is a violation of the terms of any gift to the endowment fund. The gifts appellant received, however, were for appellant's general use without any restriction. The gifts could have been used in any fashion to accomplish appellant's purposes. *See Scott on Trusts,* § 348.1. Appellant, by proper vote, selected the irrevocable trust as the means to carry out the corporate purposes.

transfer its assets, and that appellant properly exercised that power when its membership vot-

■ Further, the creation of the irrevocable trust fund, is thoroughly consistent with the history of the endowment fund. The members repeatedly declined to encroach upon the funds to supplement the congregation's income, considering it as a true endowment fund. Appellant cannot now complain of a breach of trust when, with full knowledge of the facts and legal rights, it has consented to or confirmed and ratified the action. *See Scullin v. Clark,* 242 S.W.2d 542, 548 (Mo.1951). Once ratification or confirmation is given, as the vote by the members and subsequent operation under the trust, it cannot be retracted because of subsequent events. *Id.*

■ Appellant argues that the provision giving a future interest to respondents Synod and Lutheran Altenheim if appellant moved from its present locality, is void for vagueness. There is no evidence, however, that appellant has decided to move from its present "locality." Nevertheless, this provision is not void for vagueness, since a charitable trust is not void for vagueness if the trust instrument states the objects of charity generally and names trustees to administer the trust within general limits prescribed therein. *Altman v. McCutchen,* 210 S.W.2d 63, 67 (Mo.1948). Equity could prevent any abuse of the trust if appellant moves from its present locality.

■ Appellant also alleges that the gift over to respondents Synod and Lutheran Altenheim is void as an unreasonable restraint upon alienation, unlawfully preventing it from exercising its right to sell or convey the present church premises. Again, there is no evidence that appellant intends to sell the church premises.

■ Missouri appears to recognize the rule that an express provision or condition against alienation in a gift to a charitable trust is an exception to the operation of the rule against restraints on alienation and constitutes a valid restraint. *See Epperly v. Mercantile Trust and Savings Bank,* 415

ed to enter into the subject trust agreement.

S.W.2d 819, 824 (Mo.1967), *modified on other grounds,* 457 S.W.2d 1 (Mo.1967); *Lackland v. Walker,* 151 Mo. 210, 52 S.W. 414 (1899). *See also Wachovia Bank and Trust Co. v. John Thomasson Construction Co.,* 275 N.C. 399, 168 S.E.2d 358, 364 (1969); Annot., 100 A.L.R.2d 1208 (1965). Since appellant has not attempted to sell or contended that it wants to sell the church property, we need not decide whether a court of equity could invalidate the provision and order the alienation of the property. In any case, the trust instrument itself would remain valid.

 Appellant next contends that the designation of the contingent beneficiaries pre-empted the court's power to exercise the *cy pres* doctrine and thus the entire trust instrument is void. This argument is totally without merit.

If a trust fails and the settlor has expressed a general charitable intent, a court may apply the doctrine of *cy pres* to continue the trust if requested. *Comfort v. Higgins,* 576 S.W.2d 331, 336 (Mo. banc 1978). If the settlor makes an express provision as to the disposition of the property in case the particular purpose fails, that provision is controlling. *See Scott on Trusts,* § 399.2. Appellant's proper designation of contingent beneficiaries to receive the income if it discontinues, is a valid gift over and merely eliminates the need for a court to apply the *cy pres* doctrine.

Finally, appellant urges that the trust should be voided because there was a mutual mistake of fact in the inducement by the parties to enter into the trust agreement. Although appellant pleaded this issue, it was not submitted to the trial court. We cannot charge the trial court with error in failing to rule in appellant's favor on an issue not presented to it. *Johnson v. Fotie,* 308 S.W.2d 662, 667 (Mo.1958). Nevertheless, the evidence fails to support a claim of mistake of fact. The membership was thoroughly briefed on the terms of the trust and understood that it was consistent with the prior use of the endowment fund. Although several small loans had been made from the principal in the past, in each instance the congregation was given interest bearing notes, and the loans were considered investments. The membership repeatedly refused to encroach upon the principal and the rule voted on in 1944 expressly so provided. We find no mistake of fact in establishing the trust.

In light of our finding that the trial court's decree was supported by substantial evidence, was not against the weight of the evidence, and neither erroneously declared or applied the law, we decline to address respondents' contentions regarding waiver and estoppel. Accordingly, appellant has no right to revoke the trust and the decision of the trial court is affirmed.

SATZ, P.J., and KAROHL, Judge, concur.