**CITY OF ST. LOUIS,**
**Plaintiff/Respondent,**

**v.**

**INSTITUTE OF MEDICAL EDUCATION**
**AND RESEARCH, a Corporation,**
**Defendant/Appellant,**

**and**

**William Webster, Attorney General of**
**the State of Missouri,**
**Defendant/Respondent.**

**No. 55892.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 20, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1990.

Robert R. Schwarz, Thomas R. Schwarz, Schwarz, Paperner & Rodemyer, Clayton, for defendant/appellant.

James L. Wilson, City Counselor, Elkin L. Kistner, Asst. City Counselor, St. Louis, for plaintiff/respondent.

HAMILTON, Presiding Judge.

Appellant Institute of Medical Education and Research (hereinafter the Institute), a charitable pro forma decree corporation, appeals from a declaratory judgment that the Institute must devote its funds and assets exclusively to assisting the City of St. Louis (hereinafter City) in providing medical care to the City's residents. The trial court specifically designated the City's Bureau of Reportable and Communicable Diseases (hereinafter the Bureau) and the St. Louis Regional Hospital (hereinafter Regional Hospital) as appropriate grant recipients. We affirm.

The Institute is a charitable pro forma decree corporation formed pursuant to an order dated February 9, 1954, of the Circuit Court of the City of St. Louis. Prior to Institute's incorporation, the City provided facilities and support staff for the care of indigent patients while the medical schools at St. Louis University and Washington University provided the medical personnel and used the City facilities for training. University-affiliated doctors donated their services. A City ordinance prohibited physicians from billing patients at the City hospitals. During the early 1950s, however, the increased availability of health insurance coverage presented an untapped funding resource. Members of the medical staff at the City's hospitals formed the Institute as a mechanism for collecting payments from insurance companies. The City then enacted Ordinance 47008 to funnel the collection of fees directly to the Institute. An Internal Revenue Service ruling provided that physicians need not account personally for the funds donated to the Institute.

Members of the Institute Board of Directors (hereinafter Board) were staff of the City hospitals with the exception of the Hospital Commissioner. All recipients of grants had staff appointments to City hospitals. During the years following its incorporation, the Institute used its funds to build animal facilities and research laboratories, to sponsor fellowships and to pay costs of attendance at meetings, to fund a trauma intensive care unit at City Hospital (Max C. Starloff Hospital) in 1980, and to provide supplemental malpractice insurance beginning in 1983.

In 1984 the City made plans to close City Hospital on June 30, 1985. Thereafter, the City executed a contract with St. Louis Regional Health Care Corporation, a private not-for-profit corporation, to provide medical services at St. Louis Regional Medical Center. The Institute's chief source of funding thus ceased to exist, but the Institute still possessed $654,538 in assets. The City brought this action seeking a declaration that the Institute's funds must be used exclusively for education and research in City-operated hospitals or similar institutions operated by the City and that the five clinics operated by the Bureau of Reportable and Communicable Diseases were such institutions. Evidence was adduced at a hearing on December 14, 1987. On March 15, 1988, the trial court issued a preliminary order directing the parties to file suggestions for a more complete order declaring the scope and nature of the Institute's obligation to assist the Bureau of Reportable and Communicable Diseases and to assist Regional Hospital. On November 7, 1988, the trial court issued its final judgment.

With that final judgment the trial court entered, *inter alia,* the following findings of fact and conclusions of law:

7. Since at least June 30, 1985, Defendant Institute has neither expended its funds [n]or devoted its assets in furtherance of medical education, research and care conducted in or through the auspices of hospitals and similar institutions operated and maintained by the City of St. Louis.

. . . .

10. Defendant Institute holds its assets in trust for the charitable purposes specified in Article Four of its Articles of Agreement.

. . . .

12. Read as a whole, Defendant Institute's Articles of Agreement constrain its activities to medical education, research and care conducted at or through the auspices of public hospitals and similar institutions maintained and operated by Plaintiff City of St. Louis.

13. The overwhelming weight of the testimony addressed at trial confirmed that the purpose and practice of Defendant Institute was ... to conduct and promote medical education research and care at hospitals and similar institutions maintained and operated by the City.

The trial court also determined that the five clinics operated by the Bureau fall within the category "similar institutions." The trial court ordered the Institute to devote its funds to assist the five clinics and Regional Hospital. Further, it provided that application for grants by the City's Director of Health and Hospitals shall be the exclusive procedure for awarding grants.

The Institute asserts the trial court erred in its declaratory judgment because (1) its rulings interfere with the fair and reasonable discretion of the Board of Directors and substitute the judgment of the trial court for that of the Board without a finding that the Board's proposed programs were in excess of its authority under the Articles; (2) its rulings substitute the discretion of the City for that of the Board as to the validity of grant applications and constitute an expropriation or condemnation of the corporate property; and (3) the conclusion that the five clinics are similar institutions to hospitals is contrary to the evidence.

This Court will sustain a declaratory judgment unless no substantial evidence supports it, it erroneously declares the law, or it erroneously applies the law. *American Family Mut. Ins. Co. v. Bishop,* 743 S.W.2d 590, 591 (Mo.App.1988). Reversal on grounds the judgment is against the weight of the evidence is granted with caution and a firm belief that the decree or judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The powers of a not-for-profit corporation and a corporation incorporated for profit are identical. *Pilgrim Evangelical Lutheran Church of Unaltered Augsburg Confession v. Lutheran Church–Mo. Syn-*

*od Found.,* 661 S.W.2d 833, 838 (Mo.App. 1983). A corporation possesses all powers of a natural person except those specifically forbidden to corporations by law. Such powers include all those reasonably necessary to accomplish its proper purposes. *Komanetsky v. Missouri State Medical Ass'n,* 516 S.W.2d 545, 553 (Mo.App.1974) (quoting H. Oleck, *Non–Profit Corporations, Organizations and Associations* §§ 47–48 (2 ed. 1965)).

■ The same rules governing construction of statutes and contracts govern the construction of corporate charters. *Missouri State Teachers Ass'n v. St. Louis Suburban Teachers Ass'n,* 622 S.W.2d 745, 749 (Mo.App.1986). A court's primary responsibility in construction is to determine the intent of the language used and to give effect to that intent. *Community Fed. Sav. & Loan Ass'n. v. Director of Revenue,* 752 S.W.2d 794, 798 (Mo. banc 1988), *cert denied* — U.S. ——, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988). This intent must first be gleaned from the plain and ordinary meaning of the words. *Id.* Provisions of the entire instrument must be construed together and, if reasonably possible, all provisions must be harmonized. *Id.* Language should not be construed to reach an absurd result. *Id.* Where the words of the instrument are ambiguous, a court may resort to extrinsic evidence to resolve the ambiguity. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Moreover, the rule of *ejusdem generis* applies. This canon of construction provides that where general words follow a specific enumeration of persons or things, the general words will be construed to apply only to persons or things similar to those specifically enumerated. *Pollard v. Board of Police Comm'rs,* 665 S.W.2d 333, 341 (Mo. banc 1984), *cert denied,* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985).

■ Paragraph Four of the Articles of Agreement of the Institute (hereinafter Articles) specifies the purposes of the Institute:

FOURTH: This corporation is formed for the following purposes useful to the public, and in the public interest only, viz: to conduct, sponsor and further medical and dental research and education in behalf of the public hospitals and similar institutions operated and maintained by the City of St. Louis, at no cost or expense to said City; and in connection therewith to formulate and espouse lectures, symposiums, seminars and other activities for the purpose of improving the training of the members of the resident staffs in said hospitals and institutions; to strive for the improvement of the standards of medical and dental care and treatment therein; to disseminate information to the medical profession and the general public which will be useful and helpful in improving the health of the citizens of the community; and in general to do any and all things, and engage in all such activities, as may be necessary to discover new and improved methods of treating diseases of, and injuries to, the human body and which will tend to reduce the morbidity and mortality rates among human beings.

Paragraph Four, while setting forth the Institute's purposes, must be construed in light of other pertinent provisions within the Articles. Paragraph Two states that "[i]ts location shall be in the City of St. Louis, but the corporation may have one or more offices in other locations to carry on any or all of its objects and purposes." Paragraph Six states that, "[t]his corporation shall engage in all activities consistent with the objects and purposes enumerated herein in the City of St. Louis, Missouri, or in any other place where said City may operate and maintain public hospitals and similar institutions."

The Institute contends the language of the Articles places no limitation on it to provide funds exclusively for City maintained and operated institutions. It asserts that Paragraph Four of the Articles divides the Institute's listed purposes into two categories: those related to City Hospitals and those related to general purposes. The

Institute draws this distinction because the last two purposes listed in Paragraph Four of the Articles make no direct reference to the City.

Phrases and words used to describe earlier-listed purposes, however, also create an implication that the last two purposes must be related to City hospitals and similar institutions. For example, the phrases "in connection therewith" and "said hospitals and institutions," and the word "therein" refer to the specific antecedent phrase, "public hospitals and similar institutions." Thus, the last, more general words are, arguably, limited by the earlier more specific enumeration requiring a connection with public hospitals and similar institutions. Moreover, the limitation on location expressed in Paragraphs Two and Six of the Articles suggests an intent to create an exclusive connection between the Institute's purposes and the City. At the very least, the wording of the Articles discloses ambiguity.

■ Finding ambiguity in the language of Paragraph Four of the Articles, the trial court properly considered extrinsic evidence in the form of testimony from incorporators and officers of the Institute. Dr. Leo Mulligan, one of the incorporators of the Institute and its first president, testified that the incorporators developed the Institute "to promote the welfare of the two City institutions and its patients." Dr. Mulligan also testified concerning the list of purposes that "[a]lmost everything is included. But primarily the, [sic] the aim or the purpose of the Institute was to improve the medical care at the City operated institutions."

Dr. Ralph Kinsella, former medical director of City Hospital and current medical director of University Hospital, St. Louis University Medical Center and president of the Institute, testified that, except for the hospital commissioner, all board members had been medical staff members at one of the City hospitals. All members of the medical staffs at City hospitals were members of the Institute. He further testified

that no new programs were undertaken after May, 1984.

Dr. William Landau, a member of the Institute since 1954 and president of the staff at St. Louis Regional Hospital, testified that the primary source of Institute funds was the fees for professional services of the City hospital staffs. He testified that the ultimate purpose of the Institute, beyond the symbiotic relationship between the City's hospitals and the universities, was to "enrich the quality, improve the quality of medical care in the hospital to optimum level that could be obtained." Furthermore, he knew of no Institute activities without substantial linkage to City operated and maintained hospitals and similar institutions.

The testimony of the doctors concerning intent and past practices provides substantial evidence that the purpose of the Institute is to promote medical education, research, and care at hospitals and similar institutions maintained and operated by the City. The testimony supports the trial court's inference that the intent of Paragraph Four is to limit all of the Institute's purposes to activities having a connection to City maintained and operated hospitals and similar institutions.

■ The Institute further contends that this conclusion interferes with the discretion of the Board of Directors of the Institute. It relies on *Ranken–Jordan Home for Convalescent Crippled Children v. Drury College*, 449 S.W.2d 161 (Mo.1970) and *Taylor v. Baldwin*, 362 Mo. 1224, 247 S.W.2d 741 (1952). These cases hold that the board of directors of a charitable corporation possesses broad discretion in determining the means for accomplishing its purposes, and courts will not interfere with the board's exercise of discretion "unless there is such a substantial departure from the dominant purpose of the charity as to amount to a perversion." *Ranken–Jordan*, 449 S.W.2d at 166. The trial court determined that the purpose of the Institute was to conduct and promote medical education, research, and care at public hos-

pitals and similar institutions maintained and operated by the City. The trial court has not limited the means of carrying out that purpose, but has construed the purpose from the Articles and from extrinsic evidence. Therefore, the funding of any activity that has no direct connection with a public hospital or similar institution operated by the City would fall outside the scope of the purposes of the corporation as specified in the Articles. To condone such funding of unrelated activities would so contravene the proper purposes of the Institute as to pervert them.

Because the City no longer operates a public hospital, the trial court found that the five Bureau clinics were "similar institutions" and ordered the Institute to consider grant applications from the Director of Health and Hospitals on behalf of the Bureau and of Regional Hospital as the exclusive means of expending its funds. Testimony showed that these institutions are the only institutions similar to the public hospitals that originally received the grants. In view of the purposes of the Institute and the limited number of qualified recipients, this procedure in no way limits the discretion of the Board. It still may exercise discretion in the selection of grant applications submitted by the Director of Health and Hospitals that further the purposes of the Institute.

The trial court's judgment in no way interferes with the Board's discretion under the Articles, nor does it substitute the City's discretion for that of the Board. Nor does the trial court's judgment constitute a condemnation. Its order specifically says "... the Institute *shall give such applications due consideration* and promptly award grants and awards pursuant to its obligations in fulfillment of its charitable obligations as defined in this Order." (Emphasis added). Points I and II are denied.

■ Finally, the Institute asserts the trial court erred in concluding the five clinics operated by the City through the Bureau of Reportable and Communicable Diseases are "similar institutions" as the term is used in the Articles. The Institute contends that such a conclusion is contrary to the evidence. The trial court heard testimony from Dr. Wilma Claseman, (hereinafter Claseman) the Assistant Health Commissioner who directs the Bureau. The five clinics operated by the Bureau are the Sexually Transmitted Disease Clinic, the Tuberculosis Control Clinic, the Immunization Clinic, the Hypertension Clinic, and the Childhood Lead Poisoning Control Clinic. Claseman testified that the Sexually Transmitted Disease Clinic provided over twenty teaching services to medical and nursing staffs and to medical and nursing students. That clinic is also involved in two research projects, one in cooperation with the Center for Disease Control and the other in cooperation with the State Public Health Laboratory and the City Public Health Laboratory. She also testified to similarities between the clinics' services and those of hospitals in general. Furthermore, Dr. Mulligan testified that in the past the Institute had conducted activities at Health Department Clinics. The trial court therefore had before it substantial evidence that the clinics were similar to hospitals.

The Institute also asserts that dicta in *Taylor v. Baldwin,* 362 Mo. 1224, 247 S.W.2d 741 (1952) require a conclusion that clinics and hospitals are dissimilar. That case involved the question of whether an affiliation of Barnard Free Skin and Cancer Hospital (hereinafter Barnard) with Washington University violated Barnard's corporation charter. Appellants contended that the affiliation, which would result in the closing of Barnard's clinics, would destroy the legal entity and functional integrity of Barnard. Barnard's charter, however, contained no reference to clinics and was worded strictly in terms of "affording medical and surgical aid and nursing to persons suffering from skin diseases...." *Id.* at 751. It is in this context that the Missouri Supreme Court declared that a " 'clinic' generally is but a station or institution, usually operated in connection with a medical school or a hospital, and used as

a place to examine and treat out-patients." *Id.* The Supreme Court noted that the operation of clinics was not a purpose of Barnard according to the terms of its charter and that the discontinuance of the clinics did not violate the charter. The Court in no way condemned the past use of Barnard's funds in operation of the clinics. If anything, the dicta in *Taylor* confirm that, at least in terms of Barnard's charter purposes, a clinic and a hospital are sufficiently similar that it constituted no charter violation to discontinue one to affiliate with another. Point III is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.